23cv 2652

RECEIVED

NOV 28 2023

CLERK
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA



**Lynnette Chambers** <lchambers@richfieldmn.gov>
To: 'Claire Lee'



Per our phone conversation of August 17, 2022, Richfield HRA does not have any copies of your old inspection reports. You had asked me the question if you ever had a failed inspection of your unit in Richfield and I told you I remember only one and that was the one time you had a complaint inspection because the oven on your stove was not working and the maintenance people came and saw the burners would work but did not wait long enough to see the oven did not maintain consistent heat over a period of time. The reason I recall this so well is because you had set up the complaint inspection and then the morning of the inspection you called and left a message on my voice mail stating you had been working the night before stocking shelves at Target and needed to get some sleep and you would call back to reschedule. This message was the only message I received on that date and I never had another call that day as it was September 11, 2001.

I told you that we don't have any old inspections on your property but that the inspectors would always come back and tell me about your apartment and how lovely it was. They always commented that not only was it meticulously clean, but it looked like a quaint antique shop where you had artistic displays set up in every room. The inspectors don't normally comment on their inspections, but your unit was always a standout one in such a positive way they would comment on it.

We were able to meet then in your apartment either in September or October 2001 to discuss your stove oven and I had the opportunity to visit your apartment and indeed it was meticulously clean, tidy and beautifully presented. In fact I think I commented at the time just as I did yesterday that "one could eat off your floor."

I pulled up our computer records and see that we provided rent assistance in that unit from 10/20/1999 to 05/31/2016. I believe that prior to you receiving Section 8 assistance in that unit you had rental assistance through another state program that was run by Metro HRA.

If I can be of any more assistance to you, please let me know.



SCANNED
NOV 28 2023
U.S. DISTRICT COURT MPLS



**CITY OF**
**BLOOMINGTON**
MINNESOTA

# Environmental Health
# Case Record

| Location name | | | | Case No HN | |
|---|---|---|---|---|---|
| Address 10101 Lyndale Ave S | | | | Rec'd by ES | Date 8/19/21 |
| Owner name LYN-VILLA PROPERTIES C/O PREMIER PROPERTIES | Phone Andy Akin | | | Referred to SR | Date 8/19/21 |
| Address PO BOX 390195 EDINA MN 55439 | # 952-941-2400 | | Email | | |

| Confidential information Minnesota Data Privacy Act | Complainant name | | Phone | ☒ Anonymous ☐ Staff |
|---|---|---|---|---|
| | Address | Email Address | | ☐ State agency ☐ Other |
| | Complainant gives permission to go on property to view. ☐ | | | |

**Narrative**

Possible GUD - CV

| Date | Action taken |
|---|---|
| 8/20/21 | Spoke to hoarder tenant, infested w/ flies. Unit #219 not inside for 3 months, smell next door. Tenant has some special needs. Scheduled a time to meet. |
| 8/26/21 | Claire Lee - 612-402-9206 Knocked but no answer. Claire was upset by our visit. Had asked to give 24 hour notice so we could go in but he didn't so we could go in. Left Claire had called the city - Karena Karla. Very upset @ our visit. I called her back & got an appointment w/ her. |
| 8/30/21 | CV spoke w/ prop mgr, Andy Akin. Prop. mgr contacted tenant via email, with proposed date & time for an inspection. Shannon left a message for Claire to cancel the inspection. m Sept 16 |
| 8/31/21 | Mark spoke to HRA - due to the Section 8 status & they reported their last inspection of the Unit was July 2019. → |

| Inspector's signature | Shannon Kohn | Date closed | 8/31/21 |
|---|---|---|---|

57_046 (06/17) pg 1 of 1

| Date | Action taken |
|------|-------------|
| 8/31/21 | Spoke to Claire, She called me & we discussed cancelling the appointment on Sept. 10th. She requested our transcripts of phone calls. I informed her that our conversations are not recorded. Colleen called Andy to let him know we will not be there on the 10th |
| | HRA is going to work with Claire. |
| | CN director assigned HRA to follow up. |
| | Close case. |

Reasonable accommodation/waiver of trust portion of rent

 **Claire Lee** <claire1957@yahoo.com>
To: Karla Henderson
Cc: mmanderschied@bloomingtonmn.gov, Dwayne Lowman
Bcc: Claire Lee



Please contact me no later than noon tomorrow (Monday) regarding the refund of the 30% portion of trust pmts that were improperly and illegally charged to me as higher rent and whether you plan to recalculate a new rent amount for me that is less the 30% trust portion of my share of the rent. I did inform the HRA that it was unfair to charge me due to my disability related need for it to be disbursed monthly instead of a lump sum and because I had no control of it. I did try to get it disbursed as a lump sum payment several times, but I was denied. I should not be charged 30% of my inheritance trust, when a non-disabled person who is able to get their inheritance in a lump sum is not charged that same amount, just the interest, which is maybe like 1.5% or so. This is less favorable treatment in the terms and conditions of my tenancy and rent/voucher on account of my disability

I need to know this asap because I need to tell my rep payee how much rent to pay for March because my portion of the rent should be reduced by about $75/mo. I asked you to respond by last Friday, but have received nothing in response. Please respond by noon Monday. Thank you.

I do not authorize you or Bloomington HRA to contact the trustees (past or present) handling the trust, because it is now a law firm and it will likely cost me a lot of money. I told Robin that at the last Section 8 review last summer and I gave her a copy of the check instead. Any and all authorizations regarding the trustees or trust are and have been previously revoked

If you have any specific questions about the trust, I will try to answer them.

Sent from Yahoo Mail for iPhone

 **Claire Lee** <claire1957@yahoo.com>
To: Henderson, Karla
Cc: mmanderschied@bloomingtonmn.gov, Dwayne Lowman
Bcc: Claire Lee

This hearing will considerably delay this process for possibly months. If I'm being charged the wrong amount of money, then you should promptly refund it. Furthermore, you need to issue a decision about reasonable accommodation/waiver before I can proceed with this hearing process according to the protocols and I don't know if such hearings can determine discriminatory conduct because most people don't usually have that expertise to make a legal determination on that.

In addition, this will cause me further harm for such a long, unnecessary delay. As I informed you, I'm having medical problems and car issues that necessitates the use of this money and I need to buy a recliner for my health and any delay will further exacerbate my health issues. I may just as well add this to my discrimination complaint with HUD, because this has been ongoing for several years.

Please respond before another 6 days — I do think I should have received a more prompt response as this is urgent because it is related to health. Thank you

 **Claire Lee** <claire.1957@yahoo.com>
To: Mary Dobbins
Cc: Melissa Manderschied, Karla Henderson

 Mon, Mar 23, 2021 at 10:14 AM

As I understand it, you are now requesting information as to the source of the trust inheritance. I assume that you want info/verification that it was an inheritance from my father. This is the first that I have heard of this. The form that Aarica sent me was only to list the amount of disbursements that I have received.

I told Aarica that the law firm will undoubtedly charge me money to fill that out and told her that I could provide a copy of the check that I receive monthly instead, but Aarica has not responded and that was in March. In addition, the HRA verifies the amount every year to calculate my portion of the rent and they already have a copy of that check. So the HRA is already aware of the total amount, so they did not need that info, or me to fill out the form and could have already provided me the refund and adjustment. I receive a $250 check monthly that I report every year (there was a 12 month time period where I did not receive it) and your records should already reflect this.

When my sister-in-law was the trustee, Robin Latzke communicated with her numerous times by email and possibly by phone. Robin is well aware that this trust was established by my father for my inheritance when he died as I have told her numerous times and she has had communications about that with my sister-in-law. I complained to Robin numerous times that it wasn't fair for me to have to pay 30% of my trust as it was for my disability and never was I told of any option to appeal that decision or sent any appeal info or forms. She also knew I had a representative payee for the same reason to pay my bills and she had proof of that. Robin told me she checked on it and that I had no choice but to pay it or to get my trust converted into a lump sum payment. I tried to do that several times, but was denied, because my father wanted this monthly payment because of my disabilities.

I will try to get written verification that this was from my dad's inheritance to me. I have needed that full reimbursement very badly for a recliner for my legs and it is unconscionable that it has not been sent to me several months ago when I requested it. I never should have been charged that extra $75/month in the first place.

Sent from Yahoo Mail for iPhone



 **Mary Dobbins** <mydobbins@landrumdobbins.com>
To: Claire Lee

 Mon, Mar 23, 2021 at 9:08 AM

Ms. Lee,

In order to make the rent adjustment you have requested, it is necessary for the HRA to determine the source of the funding of your special needs trust. The source of the funding of the trust is determinative regarding whether the distribution of principal is considered income for purposes of the rent calculation. That documentation has not been provided to the HRA. The HRA cannot address your request for a rent adjustment without this information.

Additionally, in her email to you earlier today, Robin Anderson also asked where she could send the verification form regarding the trust. That information also needs to be provided.

Mary G. Dobbins
Landrum Dobbins LLC
7400 Metro Boulevard
Suite 100
Edina, MN 55439
952-893-2925

## Fw: Inspection RA request

From: Claire Lee (claire.1957@yahoo.com)

To: claire.1957@yahoo.com

Date: Monday, November 27, 2023 at 04:11 PM CST

Sent from Yahoo Mail for iPhone

Begin forwarded message:

On Monday, July 18, 2022, 3:53 PM, Claire Lee <claire.1957@yahoo.com> wrote:

It appears that you previously stated that you could grant extensions of time after the inspection but could not delay the inspection past recertification date, so I am requesting an extension of time past the 30 days for re-inspection due to the same disability and covid related reasons that I have previously stated to you. I am requesting the same October 31 date, but I may be able to complete it sooner and if so, would let you know. I am also requesting that the HRA pay its total portion of rent to the landlord.

As I previously told you, I have never had flies, smells or any accumulation of garbage in my apartment and this was confirmed by the inspector and I should never have been stereotyped and treated as though I did. I just have a lot of personal property and also inventory for the Ebay store that I was working with voc rehab to start and it is in piles and unorganized throughout my apartment. I have never recovered from the trauma and mental and physical distress associated from the move, much of it caused very unlawfully and unnecessarily by your client and your client made my move much more difficult for me. Trauma is a big factor in causing and/or exacerbating hoarding tendencies as it has been in my case. I passed every Richfield Section 8 inspection for 20 years and numerous times the inspector commented what a clean apartment I had. I have been struggling with getting my apartment unpacked and organized, etc. since I moved to Bloomington. This is a marked decline in my functioning since Bloomington has come into my life and negatively affected it. Since the unannounced visit last fall for a surprise inspection, my apartment appearance has gotten much worse. I was so scared and distressed, I blocked myself in my apartment with things and couldn't do anything to work on my home. It also caused me physical and emotional damage and also monetary damage because I have been unable to start my Ebay store.

The inspector could have easily inspected my kitchen and at least one bedroom, but he chose not to, because he said he was in a hurry. I had been trying to sort and put items in bins and had just temporarily put the empty boxes and plastic bags in front of the doorway as I was going to re-use them for other things as I sorted. I told him I could move them fast, but he decided just to leave. There was nothing preventing him from turning on the bathtub faucet, as I am able to do it or I could have done it for him. All of the switches were easily accessible to him and I had all of my lights on, so he could tell they were working. Also, my air conditioning was on in my dining room, so obviously that outlet worked. Really, there were only a couple of outlets that were inaccessible to him and there was a lamp lit up, so that outlet worked and he could hear my tv on in my living room, so that outlet obviously worked. He was able to tell from observation that at least one outlet in every room worked. As for the windows, I don't open them and I live on second floor and I have access to the windows if I needed to be rescued in the unlikely event of a fire.

Your insistence on the inspection at this time has not only caused me physical, emotional, property and monetary damage, but has caused an unnecessary additional inspection and more distress to me. Furthermore, you took adverse action and punished me for my disabilities by withholding and/or abating the rent to the landlord due to the inconclusive or deficient inspection. This also caused me numerous financial problems, unpaid bills and late fees and overdrafts as I had my rent on autopay and the HRA portion was taken out of my account and that caused me to be $500+ overdrawn and this caused much distress.

**LANDRUM
DOBBINS LLC**                          ATTORNEYS AND COUNSELORS AT LAW

**MICHAEL A. LANDRUM**
612-868-8730
952.446.1386 Fax
mlandrum@landrumdobbins.com

                                                    **MARY G. DOBBINS**
                                                    952.893.2925
                                                    952.893.2939 Fax
                                                    mdobbins@landrumdobbins.com

Via email

July 21, 2022

Claire Lee
10101 Lyndale Avenue South
Apt. 219
Bloomington, MN 55420

RE:   Reasonable Accommodation Request
      July 18, 2022

Dear Ms. Lee:

I am writing in response to your email of July 18, 2022.

In that email, you requested that the Bloomington HRA extend the date by which your unit will be reinspected to October 31, 2022 as a reasonable accommodation to permit you to have additional time to correct the issues that were identified in the inclusive June 30th inspection. The HRA is willing to grant your request.

However, the federal regulations at 24 CFR §982.404 do not permit the HRA to make any Housing Assistance Payment (HAP) with respect to a unit that has not passed a Housing Quality Standards (HQS) inspection. Therefore, the HRA is unable to make the HAP payment to your landlord until your unit passes the inspection. Thus, the resumption of the HAP payments is dependent upon your completing the work necessary to bring your unit into compliance with HQS.

The determination that the HAP payment cannot be made due to the inspection result is not in any way an "adverse action" taken by the HRA to "punish" you for your disabilities as you have claimed. As I have stated above, that result is mandated by the federal regulations.

If you are in need of assistance in completing those tasks, I remind you that the HRA has recommended contacting the following agency that provides such assistance to residents who are 60 years and older.

    ○   Senior Community Services
        952-746-4046
        www.seniorcommunity.org

7400 METRO BOULEVARD ▪ SUITE 100 ▪ EDINA, MINNESOTA 55439

## Fw: Reasonable Accommodation/Rent Abatement

From: Claire Lee (claire.1957@yahoo.com)

To:     claire.1957@yahoo.com

Date:  Monday, November 27, 2023 at 03:16 PM CST

Sent from Yahoo Mail for iPhone

Begin forwarded message:

On Thursday, July 28, 2022, 3:34 PM, Claire Lee <claire.1957@yahoo.com> wrote:

You're an attorney who has been providing legal counsel to Bloomington HRA for more than six years and for probably much longer and undoubtedly knows how to read a statute. Contrary to what you claim, 24 CFR 982.404 (attached) DOES NOT state that you must not make housing assistance payments (HAP) until there is a passed inspection when the tenant caused/contributed to the housing quality standards (HQS) deficiencies and you are just making that up and have intentionally falsely stated the clear meaning and intent of the statute. It states that about HAP only under the OWNER obligations in subsection (a) wherein the entire section talks about OWNER deficiencies they caused and failure to correct HQS violations within the prescribed period of time — and only then can you cease, abate or withhold HAP to the OWNER, for the OWNER caused deficiencies. This makes sense because it isn't the owner's fault if the tenant caused the deficiencies and they should not be penalized in not getting their rent for something they can't control or didn't cause. Further, it also says the owner is not responsible for the HQS violation of the tenant, buttressing the fact that you can't abate their rent and penalize them. But landlords do expect to get full rent and they will take it out on the tenants by terminating the lease, non-renewal or decrease in services. You have caused me extreme distress and other harms by failing to accommodate and forcing inspection and by not paying the HRA portion of the rent. I have been very scared to get my mail or open my door because I thought I would see an eviction notice in the mail or taped to my door for nonpayment of rent. This is an egregious, unlawful and intentional interference of my tenancy and you continue to threaten me with that, even though you have had numerous chances to pull that back and reconsider. HAP rent has not been paid since June.

Furthermore, HUD rules under Chapter 10 HQS specifically and unequivocally state **** "housing assistance payments are NEVER abated for tenant deficiencies"*** (attached).

Furthermore, because of the clear and unambiguous federal statute and HUD rule regarding abating, withholding or not paying HAP, Bloomington HRA rules do not allow abatement of tenant rent either - they pretty much mirror HUD rules. In addition, the HUD rules and statute state that the HRA must make the HAP on time and that the PHA's must follow HUD rules and not discriminate which you have also violated (except in the case of granting RA that would alter or change the rule to allow a disabled person equal access and to live successfully in their home), and no matter how much you wish that you could punish and abuse me by withholding or abating the rent to the landlord and how much you falsely claim that you are obligated to do it under the law, you have no legal authority to do so and you know that, but you intentionally do it anyway. You pretty much interpret the rules only in the way that benefits your client, even when it is clearly wrong. This goes against HUD rules and makes the housing unaffordable and unassisted, which clearly goes against Section 8 purposes. I have not committed any HQS violations or any other Section 8 violations that would warrant termination of subsidy and have requested RA to comply with the rules regarding inspection and HUD supports the granting of reasonable accommodations for people with disabilities. I also requested you pay the HAP as part of my RA requests, so even if it had been legal to abate the rent (which it wasn't), you still were required to consider paying it as part of RA, which you failed to do. It would have been reasonable to pay it that way, as it was a disability related issue to allow me a successful tenancy.

You (your client) have violated federal law, HUD rules and discrimination laws by illegally decreasing my services and refusing to pay my housing subsidy to the landlord under false pretenses. You have failed to reasonably accommodate me in several different ways. You have blamed and threatened me for my disabilities, stereotyped me and retaliated against me. You and your client have not acted in good faith and have frustrated pretty much every reasonable accommodation request I made. You are punishing me for my disabilities and retaliating against me because I complained about discriminatory conduct of Bloomington and the HRA. There is a growing record of this discriminatory conduct — not engaging in any interactive process and denying me housing/apt due to my RA request; increasing my tenant obligation by $75 that you do not charge non-disabled tenants who get inheritances, on account of my disability related method of how I receive my inheritance and continuing to charge me after you received the verification of the inheritance that you requested; and all of the adverse actions and denials associated with this inspection that have been illegal and in bad faith, including refusing to pay my housing subsidy and continuous threats, among other things.

My doctor and I asked for reasonable accommodation to delay the inspection and this RA was needed due to my disabilities and for covid related reasons. (There is also a directive from HUD, that inspection is not required if the tenant has covid related reasons and this was made when or after the inspections were re-instated this year, so you violated that also). It was also necessary due to the damage and distress I have suffered from Bloomington's illegal actions towards me that caused and/or contributed to my situation and declining health. This was requested so that I could comply with the rules and pass inspection to avoid all of this distress, punishment and drama that you have so unnecessarily and illegally subjected me to. This is a legitimate and commonly accepted use for reasonable accommodation. There is no legitimate, non-discriminatory reason why this was not granted by you or your client. Furthermore, HUD has stated and recommended that accommodations be granted (attached) because the tenant and their doctor know best what RA are needed, not PHAs or landlords. My doctor and I told you I would need until October 31 and that I had numerous mental and physical conditions where I needed to work slowly and pace myself so that I would not hurt myself or exacerbate those conditions, etc. - what didn't you understand about that?

I suppose you could have taken steps to terminate my assistance like you stated, but doing so would have been unwarranted and illegal and because of a disability, especially when I had asked for RA in order to comply with the rules.

The accommodation that you gave me for inspection was very insufficient and I told you that. It was the equivalent of giving a person with a mobility impairment a parking space in the 3rd row from the building when they needed and requested a space next to the building. Even though you moved them 2 rows closer from the 5th row, it didn't really help and this would be a violation of discrimination laws, both federal and state. This is the equivalent of what you did with me, you gave me something I told you wouldn't help or work.

You talk as though you don't believe in RA, you continuously blame me essentially for my disabilities and "causing this" and for me not being able to be ready on your timeline, after my doctor and I told you from the beginning that I would not be able to and because of this, I requested RA.    You have continuously threatened me with adverse action to the point of being abusive for things that I am having great difficulties with due to disabilities.  You have threatened and put in jeopardy my housing by not paying my rent and doing this to someone you know has PTSD and extreme fears over losing my housing and going homeless.

You keep referring me to senior services. As I have told you, I am high risk for covid and am scared to have people in my apartment especially since my vaccine has waned. I was very stressed to have the inspector here for the 5-10 minutes he was in my apartment.  How could I have someone come for 8 hours - either you don't listen or choose not to believe me. Furthermore, I have in the past called for services to help and it generally takes about 3 months as there are waiting lists and very small staff or volunteers.  In addition, I just spoke with someone at another place and they don't do this kind of work - only repair work.  If you have never lived in poverty, your privilege makes you believe that these services are readily and immediately available and easy to get, which is not the case.  I have asked all over for 25 years for help moving furniture so I can buy a used couch - still after 25 years there is nothing.

Contrary to your claim that I caused this, I didn't cause you to abate the rent, in violation of federal law and HUD rules, nor did I cause this because I rightfully asked for RA which would have avoided all of this.

Please pay the HRA portion of the rent immediately and all of the fees associated with non-payment like you are obligated under the law to do so, as I have requested numerous times.

I am sending the attorney for Bloomington copies because the HRA employees are Bloomington employees and Karla H copies because she is the director of Community Development of which HRA is part of.

**Office of the Assistant Secretary, HUD**                    **§ 982.405**

exception will be considered by the PHA.

(4) If an acceptable unit is available for rental by the family, the PHA must terminate the HAP contract in accordance with its terms.

(c) *Termination.* When the PHA terminates the HAP contract under paragraph (a) of this section:

(1) The PHA must notify the family and the owner of the termination; and

(2) The HAP contract terminates at the end of the calendar month that follows the calendar month in which the PHA gives such notice to the owner.

(3) The family may move to a new unit in accordance with § 982.314.

(Approved by the Office of Management and Budget under control number 2577–0169)

[60 FR 34695, July 3, 1995, as amended at 60 FR 45661, Sept. 1, 1995; 64 FR 26647, May 14, 1999]

### § 982.404  Maintenance:  Owner  and family responsibility;  PHA remedies.

(a) *Owner obligation.* (1) The owner must maintain the unit in accordance with HQS.

(2) If the owner fails to maintain the dwelling unit in accordance with HQS, the PHA must take prompt and vigorous action to enforce the owner obligations. PHA remedies for such breach of the HQS include termination, suspension or reduction of housing assistance payments and termination of the HAP contract.

(3) The PHA must not make any housing assistance payments for a dwelling unit that fails to meet the HQS, unless the owner corrects the defect within the period specified by the PHA and the PHA verifies the correction. If a defect is life threatening, the owner must correct the defect within no more than 24 hours. For other defects, the owner must correct the defect within no more than 30 calendar days (or any PHA-approved extension).

(4) The owner is not responsible for a breach of the HQS that is not caused by the owner, and for which the family is responsible (as provided in § 982.404(b) and § 982.551(c)). (However, the PHA may terminate assistance to a family

(b) *Family obligation.* (1) The family is responsible for a breach of the HQS that is caused by any of the following:

(i) The family fails to pay for any utilities that the owner is not required to pay for, but which are to be paid by the tenant;

(ii) The family fails to provide and maintain any appliances that the owner is not required to provide, but which are to be provided by the tenant; or

(iii) Any member of the household or guest damages the dwelling unit or premises (damages beyond ordinary wear and tear).

(2) If an HQS breach caused by the family is life threatening, the family must correct the defect within no more than 24 hours. For other family-caused defects, the family must correct the defect within no more than 30 calendar days (or any PHA-approved extension).

(3) If the family has caused a breach of the HQS, the PHA must take prompt and vigorous action to enforce the family obligations. The PHA may terminate assistance for the family in accordance with § 982.552.

(Approved by the Office of Management and Budget under control number 2577–0169)

[60 FR 34695, July 3, 1995, as amended at 60 FR 45661, Sept. 1, 1995]

### § 982.405  PHA initial and periodic unit inspection.

(a) The PHA must inspect the unit leased to a family prior to the initial term of the lease, at least annually during assisted occupancy, and at other times as needed, to determine if the unit meets the HQS. (See § 982.305(b)(2) concerning timing of initial inspection by the PHA.)

(b) The PHA must conduct supervisory quality control HQS inspections.

(c) In scheduling inspections, the PHA must consider complaints and any other information brought to the attention of the PHA.

(d) The PHA must notify the owner of defects shown by the inspection.

(e) The PHA may not charge the family or owner for initial inspection or reinspection of the unit.

[60 FR 34695, July 3, 1995, as amended at 64



*Chapter 10:  Housing Quality Standards*

determine compliance, followed by a site reinspection the next business day; rotation of inspectors to cover holiday and Saturday reinspections; receipt by fax of owner/tenant certifications that corrections are made within the required time frame, or telephone confirmation to a voice mail system followed by a reinspection on the next business day.

Promptly following inspection, notices to correct routine violations should be issued and should state a date for compliance that allows time for corrections to be made and a reinspection to be conducted within the 30-day time frame.  Letters of violation should clearly state that failure to gain entry to the unit or failure to comply will result in abatement of assistance payments on the first of the month following the correction period.

Inspectors must identify the party responsible for each HQS violation listed on the inspection instrument so that proper notice can be sent to the owner and/or tenant for the appropriate items. This precludes abatement of owner rent when the violation(s) is the responsibility of the tenant. Housing assistance payments are never abated for tenant deficiencies.

The PHA must have a system to promptly identify units for which deficiencies have not been corrected within the required timeframe, in order to indicate abatement of rent and/or termination of assistance to the family.  (See Exhibit 10-10, *Sample Tracking Log for Emergency Inspections*.)  Termination of assistance procedures should be stated in the PHA administrative plan.  In order to meet the SEMAP requirement to "take prompt and vigorous action" for tenant violations the PHA should strictly follow these procedures when the family fails to correct HQS violations.



**Claire Lee** <claire.1957@yahoo.com>
To: Mary Dobbins, Andrew Akins
Cc: michele.k.smith@hud.gov, Cynthia R Fahland, Melissa Manderschied



I just checked my rental account and it has a $767 balance still owing. That should not be the case on the 10th of the month. As everyone knows, HUD has determined that it was unlawful and discriminatory for Bloomington HRA to have not paid my rent for the past 4 months. This rent situation should have been taken care of by now. I saw a lot of weird machinations and adjustments to my account last week with a different balance on several occasions; however, not any of you has told me what is going on with it. I did receive info from Michele from HUD that the HRA was going to reimburse Hennepin County, but I told her that was unacceptable, since I made the application for the grant and the matter of it is between only me and Hennepin County. Just because the HRA acted unlawfully and discriminated against me does not mean that they can repay a grant that was granted to me or on my behalf. It also does not mean that they can pay the HAP to Hennepin County. That is not permitted and is illogical. If it was indeed already repaid, please tell me the legal justification for it. If it was repaid, then please undo it or consider that payment as payment for all of their time and work on this situation as it was a very time consuming and rigorous process and resulted in many communications and confirmation work.

The HUD rules and relevant HCV statute unequivocally state that the PHA MUST pay the HAP promptly and on time each month to the owner/landlord. There is no provision to pay Hennepin County in the statute. Ms. Dobbins has taken the position that the statute must be followed to the letter of the law and that even a reasonable accommodation request can't be granted for statutory provisions and she goes even beyond that to interpret meanings into the statute that don't exist, always to the benefit of the HRA, of course.

Consequently, it is my position that the HRA pay the landlord all of the HAP that they have illegally refused to pay since July and that the grant money, which I initially thought should remain in the account until resolution, be put into an escrow account until I can get an opinion from Hennepin County what should legally be done with the grant money as it ordinarily does not need to be paid back. Surely, neither the HRA or landlord should have any access to it or make any decisions on it, since both participated in illegal conduct to induce its payment, because both parties intentionally and fraudulently claimed that I owed it. It is my belief and position that none of you and only me and Hennepin County are the ones who should decide together what happens with that grant money.

Trying to cover up illegal conduct with quickly reimbursing Hennepin County isn't going to work and doesn't make this go away or make it any better. The HRA knew I was facing eviction and did absolutely nothing to stop it or pay the HAP, even though I sent them all the eviction notices, relevant statutes and told them they were severely harming me and told them they needed to pay the HAP, because what they were doing was unlawful. The landlord repeatedly threatened to evict me for rent that he knew I did not owe, even after I sent him the HUD rules and relevant statutes and he bullied, intimidated, threatened, harassed and certainly coerced me to pay all of the HAP rent or I would be evicted. He had knowledge both that I was not legally responsible for HAP rent and that he was not allowed to evict me, but he still threatened me anyway and obtained counsel to do it and was in the process. Not only were numerous HUD rules and statutes violated, but both your conduct was outrageous, intentional, cruel, heinous, and evil and I suffered extreme emotional distress as a result along with exacerbation of physical and mental conditions/disabilities. I cried and had severe panic and worry over this almost every day and I was scared to go to the mailbox or even open my front door over fear I would see eviction notices or court papers. Both of you knew I was a vulnerable disabled senior with physical and mental disabilities, including severe anxiety, PTSD, OCD, panic disorder, severe depression, heart issues, leg/feet pain and swelling and mobility problems, among other things, and you did it anyway month after month. You knew that I had severe fears of losing my home and going homeless as a result of your last discrimination of 6 years ago when you illegally denied reasonable accommodation, refused any interactive process and denied me my voucher/housing when it was already approved by Richfield. I hope that the satisfaction you both got out of this was worth it to you, because I will do all I can administratively and legally to address the wrongs you intentionally caused me, because you harmed me greatly for no legitimate or lawful reason. I note that there has been no apology.

Please anyone respond by Wednesday about the rent situation, both on the $767 still owing and the reimbursement to Hennepin County. Hennepin County granted me the October rent also, does anyone know what happened with that?

## Fw: Request for Extension of time for Re-Inspection

From: Claire Lee (claire.1957@yahoo.com)

To: claire.1957@yahoo.com

Date: Monday, November 27, 2023 at 04:33 PM CST

Sent from Yahoo Mail for iPhone

Begin forwarded message:

On Friday, October 21, 2022, 1:11 AM, Claire Lee <claire.1957@yahoo.com> wrote:

This is my reasonable accommodation request for a second extension of time for re-inspection concerning the inconclusive inspection from June. I am requesting that I receive an extension of at least 3 months and preferably longer or to wait until the inspection for the recertification in May 2023, due to the severe damage you have caused me and because of the worsening of my severe disabilities. The extension you granted was essentially all eliminated by the constant harassment and abuse that I must pay rent that I never owed and by the landlord repeatedly threatening me with eviction. Attached is a letter from Hennepin County in support of this request. She has been to my apartment because they would not approve the grant unless she saw my circumstances. The extension is necessary because I have not been able to work on my apartment sufficiently to pass inspection because my health greatly worsened due to the extreme stress Bloomington HRA and this owner/landlord caused me by constant harassment and abuse by refusing to pay and claiming that I owed the HAP rent and falsely telling my landlord that I owed the rent so that he repeatedly threatened me and started the process to evict me which would have led to the loss of my voucher. This has caused me enormous fear, stress and damage and much greater disability and inability to function and extreme emotional distress. At my age, I cannot withstand such abuse without causing severe damage and this interfered 100% with my ability to organize and clean up my apartment and make it ready for inspection.

For the entirety of the extension you granted, you intentionally refused to pay the HAP and you falsely told the landlord that I owed this rent causing him to start eviction proceedings against me after repeatedly threatening me with eviction. All of this stress has had an enormous negative toll on my body and has made working on my home pretty much impossible. This work, without all of the stress you caused me, was very challenging for me which is why I needed until October 31. However, you have now paralyzed me with fear and caused me so much trauma and stress, that my functioning is much worse than it was already. I had explained to you numerous times, along with my doctor, that I had suffered previous trauma due to the loss of my housing and Bloomington's role in that. So, when you unlawfully refused to pay the rent and directly threatened my housing and that led to the eviction threats and process from my landlord, you directly interfered with my ability to do any of the tasks needed to get my apartment ready for inspection.

For the entirety of the extension you granted, I spent all of it under constant threat of losing my housing due to your unlawful refusal to pay the HAP. All of this stress and trauma caused constant severe anxiety, daily crying, constant rumination about your illegal actions and fears of going homeless and of being dragged through an eviction, inability to sleep, exhaustion, heart arythmias, increased difficulties with mobility due to increased leg/feet swelling, stiffness and severe pain, constant depression about your intentional harm to me, etc. This made it impossible for me to work on my apartment for re-inspection. I needed to have minimal stress so I could have the energy and focus in order to complete the tasks necessary for inspection, which you totally stripped me of.

I already had severe disabilities and you have made them even worse. Even though you knew I had severe mental disabilities and PTSD related to Bloomington's previous unlawful conduct of working to deny me housing after I was involuntarily displaced from my housing of 20 years, you decided to unlawfully refuse to pay the HAP rent that would predictably result in my eviction and loss of this housing and predictably cause me further PTSD and trauma and you then falsely told the landlord that I owed the rent so that he would aggressively come after me

and evict me. You and this landlord  were the cause of all of the damage to me and my inability to work on my apartment to get it ready for inspection. I needed to be left alone and keep my stress to a minimum in order to be able to get my apartment in shape so that I had energy and focus, but you interfered with that by your illegal conduct. Your actions caused me greater physical disability as stress worsens physical problems and causes inflammation and pain, it exacerbated my heart problems and inability to sleep causing exhaustion. I needed medical help as a result of the stress you intentionally caused me. I have also been to the doctor twice this week because of this.

If that wasn't enough, it was stressful and very time consuming applying for help to pay the rent (that you unlawfully refused to pay) from Hennepin County. I spent dozens of hours on the phone and communicating in writing to convince them to help me. I spent hundreds of hours worried and anxious that I would not get help and would get evicted, lose my housing and lose my voucher because you refused to pay the HAP. I worried where else I could get help to pay rent that I did not owe so that I wouldn't get evicted. I am still getting harassed with letters from this landlord for rent that I don't owe and that the HRA owes. This has been so upsetting and frightening for me that you have paralyzed and disabled me so bad that I can't do anything around my home and this has caused me even more severe depression and severe exhaustion. There is no one who wants my apartment organized and more functional than me and I could have done enough at least to pass inspection, if you wouldn't have caused me so many problems by refusing to pay the HAP. You not only caused me mental distress and physical problems, but also monetary problems as the full rent was taken out of my account for a few days until it was returned unpaid and it left me with no money and unable to pay bills and that caused even more stress and more financial damage.

I am not only disabled, but I'm 65 and I am unable to bounce back from severe stress, abuse and trauma/fright. I had already told you this as I have permanent damage and PTSD from the trauma Bloomington caused me 6 years ago by denying me housing and causing me to almost go homeless. You basically did almost the same thing again by almost getting me evicted by refusing to pay the HAP rent. This caused me extreme anxiety and severe fright and left me exhausted and paralyzed to do the work necessary for the inspection.

Bloomington HRA is a large cause of why my apartment looks like this. When I had my voucher in Richfield, I passed every inspection and cared about how my apartment looked and took great care of the apartment. In nearly 20 years, I did not have any problems with that HRA. What Bloomington did to me by denying me housing and causing my suicide attempt has severely impacted my ability to get things done in my apartment and caused me permanent damage. Hoarding behavior is caused and/or exacerbated by trauma and I have felt so broken and sad and empty, because it was so devastating for me to have people be so satisfied that their actions would cause me to go homeless. This has made me feel like I am not good enough to have a home. In order to ease that pain, I have shopped and acquired things to make myself feel temporarily better and they are items like I remember growing up and the items give me some comfort, but I have accumulated too much. There is nothing else that has been able to remedy the pain and damage your agency has caused me and continues to cause me. I have even had extensive psychotherapy. But you cannot keep doing things to hurt me and expect that I am going to be able to pass this inspection. What you have done is the equivalent of pushing me down the stairs and causing paralysis and then expecting that in that condition, I would be able to clean and organize an apartment. That would be impossible. A reasonable accommodation is supposed to lessen or remove barriers to help me live successfully in my apartment, but you instead threw huge barriers in my way by not paying your share of the rent, which constantly threatened my housing and caused me enormous problems and damage mentally, physically and financially, essentially cancelling out the entire 3 month RA extension period for me that you granted and then you also disabled me worse than I already was.

I have called around to several organizations for help regarding cleaning/organizing my apartment to be ready for inspection, as I have already done for the past 3 or so years. So far I have found none as no one does this extensive kind of work that I could afford. Most of the services offer light housekeeping and there are long waitlists to obtain those services, especially now after the pandemic with labor shortages and few workers willing to do this type of work.

As for the organization you keep referring me to from Hennepin County, Senior Services, they have a waitlist of more than 150 people that they have had for more than 6 months, way prior to my inspection situation, and the waitlist has been closed for a long time. Even if I could get on their waitlist, they only do light housekeeping and not even an entire residence, which would not fit my situation. Even if those barriers did not exist, the minimum they charge is $19-$38/hour which I could not afford because it would take many hours. Even if I got beyond that, the stress of having strangers in my home due to my disabilities and because of covid would be overwhelming for me on a good day. I have been working with Hennepin County and they have visited my home which was very stressful and humiliating for me and they have been trying to find services. You believe that services are readily

available for people with disabilities — they were not before covid and covid made finding help much more challenging to nearly impossible.

What I need is help consolidating/cleaning my storage lockers and then if I could make an empty locker, I could make more room in my apt for me to work slowly to organize and put things away and have an organized and more functional home. There has been no one so far willing to help me with that.

I have asked the landlord for 6 years for reasonable accommodation of another storage locker due to my disabilities so that I could remedy this, but they have refused. I asked again recently, but he refused. I have also asked repeatedly for a garage since I have moved in and I was told six years ago that I was #3 on a waitlist, but apparently I have never moved up the list or they took me off the list, because there have been numerous new move-ins with garages who appear to be non-disabled, some of them who use the garages for go-carts, tractors and snowmobiles that they drive around and recreate with in our parking lot. I asked again recently as a reasonable accommodation for my disability, as I have numerous times, but it has been refused. If I had a garage (the equivalent of 4 storage lockers) or another on-site storage locker, that would help my situation greatly.  So this landlord is also discriminating and standing in the way of my being able to remedy this.

You can't shoot someone and cause them to become paralyzed and then wonder why they can't walk, threaten them for not being able to walk or punish them for not being able to walk.  This is an analogy of what you've done to me.

Any mental health professional will tell you that the more you psychologically injure, threaten and punish someone and discriminate against them, that you pile on more disability and harm to them and cause them more inability to function or fix things.  This is what you have done with me by refusing to pay the HAP rent and in other ways.  You knew that not paying the HAP would then cause the landlord to harass me for the rent and cause my eviction.

The benefit to me, a severely disabled senior, of continued subsidized housing far outweighs the HRA's need to inspect a couple of outlets or windows - it is not even a close call.  Yes, there is a need for inspections and there is a HUD rule/statute requiring them, but there is also a need and laws to reasonably accommodate disabled people and not discriminate against or harass people by not paying their subsidy.  Certainly you should not be able to harass or disable someone so badly that it makes them unable to fully comply with the rules.  There needs to be some perspective in all of this.  There is nothing in my apartment that would be of any danger to the other tenants and no damage beyond normal wear and tear.

This is really beyond my control - I certainly tried to get you to pay the rent, but I could not force you to do it and that unlawful behavior led to my increased disabilities and inability to  get my apartment ready for re-inspection.  This is just like a landlord who is waiting for a window but because of the supply chain problems, the window is backordered so he can't comply with the deadlines from the HRA.  This is beyond his control, so the HRA must grant extensions of time to correct deficiencies and should not abate the rent.  But my need is also disability related and it would not be a hardship or unreasonable to grant another extension, especially considering the circumstances and your role in causing most of the problems.

If you leave me alone and not take anymore adverse actions against me so that I have some time to heal and possibly get some help, I can get this apartment to pass inspection.  It would pass inspection with all the things you need to inspect now and it would have 3 months ago, except that I have my personal belongings in front of the things you want to inspect, like the outlets and my apartment is too full and extremely unorganized.  There is nothing that the landlord needs to repair.  Please grant the inspection extension of time to May 2023, the date of the next inspection as this will spare me the extreme stress of another re-inspection.  If you are not willing, then grant me an additional 3 months, the time that you took from me with all of the discrimination and severe emotional and physical distress you intentionally caused me by jeopardizing my housing when you refused to pay the HAP and falsely told the landlord I owed the HAP and he unjustly started eviction proceedings against me.

Please respond with a decision by end of business tomorrow (Friday). Thank you.

Attached: email from HC in support of RA; partial email from Richfield HRA concerning my outstanding apartment; email from landlord calling off eviction and falsely claiming I owed the rent; letter from therapist about my PTSD; letter from psychiatrist for RA; 1st and 2nd notice from bank that I was overdrawn due to HRA refusal to pay rent as entire amount was taken out of my account for a few days leaving me over $500 overdrawn so that I could not pay bills and then check was returned; 1st eviction notice.



■■ T-Mobile LTE          12:58 PM               60% ▢

X          **Lee, Claire Bloomingt...**          ⬆

  **Hennepin County Human Services and Public Health Department**

**2215 East Lake Street, Minneapolis, MN  55407**      **(612) 348-2193**



Date: 10-19-22

To: Mary Dobbins
   Aarica Coleman
   Bloomington Housing Authority

From: Jamie Hubbard, MSW, LMFT
     Senior Social Worker

Re: Extension for Claire Lee

Dear Ms. Dobbins & Ms. Coleman

I am a Hennepin County social worker who has recently started working with Ms. Claire Lee
who resides at 10101 Lyndale Ave. So., Apt. # 219, Bloomington, MN. We have met in-person &
I have provided emotional support to her with the hope that she will be able to pass inspection. I
would like to write a letter in support of Ms. Lee's request for an extension of the amount of time
she has to complete the housing inspection. Ms. Lee has been unwell and therefore has not
been able to complete the tasks necessary to pass the inspection. Ms. Lee has indicated that
the decision to not pay the subsidized portion of the rent also caused significant stress for her
which, in turn, negatively impacted her health. Given that Ms. Lee has indicated she is in poor
health, I would like to support and reinforce her request for an extension until May 2023. Please
contact me with any questions at 612-596-7418. Thank you.

Jamie Hubbard, MSW, LMFT
Office of Multicultural Services
Hennepin Co. Health & Human Services
2215 E. Lake St, MC 629
Minneapolis, MN 55407

jamie.hubbard@hennepin.us

Direct Tel: 612-596-7418
My cell: 612-235-1262
Main office: 612-348-2193
Fax: 612-321-3828





**Bloomington Mental Health Services**
200 West 98 Street #107
Bloomington, MN 55420
612.968.6097. F. 612.435.9842
Bloomingtonmentalhealthservices.com

May 14, 2018

Bryan Hartman
HRA Program Manager

Mr. Hartman,

I am writing on behalf of Claire Lee in support of a reasonable accommodation in the handling of her Section 8 Housing file. Ms. Lee is a patient who I have treated in psychotherapy.

Ms. Lee has symptoms of Post Traumatic Stress Disorder related to displacement two years ago from home of 20 years. At the time she thought she would be homeless and reports a sustained period of uncertainty and fear. At this time symptoms include dread and fear at being forced to move again, hyper vigilance, and flashbacks.

Ms. Lee found that those symptoms returned when she was scheduled for her inspection due this month. Specifically, Ms. Lee is requesting a different case manager handle her current inspection.

Thank you,

John O'Brien
LICSW
612.968.6097

▪ı ll T-Mobile  LTE          8:41 AM          ⊿ 26% 🔋

< 　　　　　　　　　　　　　　　　　 A**A**

 **Wells Fargo**　　　　　 **Visit site**

## Wells Fargo insufficient funds notice ☆

From alerts@notify.wellsfargo.com
To claire.1957@yahoo.com
Jul 6 at 2:48 PM ∨

**WELLS FARGO**

**Insufficient funds notice**

On 07/05/2022 your available balance for your Wells
Fargo account XXXXXX3168 was insufficient to cover the
following transactions.

| Transaction Description | Amount | Action |
|---|---|---|
| Premier Properti WEB PMTS 070522 L1ZW36Claire Lee | $1095.00 | RETURNED |

If you've already taken care of this overdraft, there's
nothing more you need to do. If you haven't, please follow
these steps to determine how much you need to deposit.

1. Sign on to your account or visit any Wells Fargo ATM
   to review your available balance.
2. Take a look at any recent or upcoming account
   activity

**larica** <acoleman@bloomingtonmn.gov>
ee,  Mary Dobbins
.k.smith@hud.gov

 Mon, Oct 24, 2

 extended period to conduct the required HQS inspection has been received.

ur request and it is denied. We have been working on this recertification and needed inspection since February 2022. The original required HQS inspection has previously been res
roved reasonable accommodations. Your inspection is scheduled for October 31st; you will need to keep this date. If your until does not pass due to tenant and/or landlord fails we
juidelines and HUD regulations, which include swift and immediate action to repair fails up to program termination.


ა
۱gtonmn.gov


:ssage







Via email

October 24, 2022

Claire Lee
10101 Lyndale Avenue South
Apartment 219
Bloomington, MN 55420

RE Request for Accommodation

Dear Ms. Lee:

The Housing and Redevelopment Authority in and for the City of Bloomington (HRA) has received your request for a reasonable accommodation to extend the time for the Housing Quality Standards (HQS) re-inspection from October 31, 2022, to May 2023; as submitted by email on Friday, October 21, 2022, at 1:11 AM.

I have reviewed the request and it is denied. The reason for denial is it clearly alters the HRA Housing Choice Voucher (HCV) program. Our HCV program is currently in compliance per Notice PIH 2020-13(HA), REV-1 and waiver HQS-5 which required inspections from 2020, with owner certifications submitted in 2021, to be completed by June 30, 2022.

We have been working on this recertification and needed inspection since February 2022. The original required HQS inspection has previously been rescheduled and done so under approved reasonable accommodations. Your inspection is scheduled for October 31st; you will need to keep this date. If your unit does not pass due to tenant and/or landlord fails we will be required to follow the HQS guidelines and HUD regulations, which include swift and immediate action to repair fails up to program termination.

Please note the inconclusive items on the enclosed inspection report were for health and safety violations; there must be a clear path to access the unit to conduct the HQS. A failure may result in immediate program termination.

Sincerely,

Aarica L. Coleman
HRA Administrator

BLOOMINGTON HOUSING AND REDEVELOPMENT AUTHORITY
1800 W. OLD SHAKOPEE ROAD, BLOOMINGTON MN 55431-3027
PH 952-563-8937   FAX 952-563-4977 MN RELAY 711

AN AFFIRMATIVE ACTION/EQUAL
OPPORTUNITIES EMPLOYER

# HQS INSPECTION FORM

**Inspection Type:** Initial-LIP   Initial M/I   (Re-exam LIP)   M/I   Audit
**A. GENERAL INFORMATION**   BR size: 1 (2)3 4 5   Hsg Type: (APT) DP TH SF DB

Inspection Date: _____   Re-Exam Date: 7/2022

Tenant: CLAIRE LEE
Address: 10101 LYNDALE AVE   S   #219
Phone # (612) 402-9206   P = PASS
Owner's Name: LYN VILLA APTS (952) 941-2400   F = FAIL   I = INCONCLUSIVE

**B. Check List:**   Room Codes: 1=BR 2=DINING RM 3=2ND LIVING RM 4=HALLS 5=ADD'L BATHRM 6=OTHER

| 1. LIVING ROOM | P | F | I | 3. BATHROOM | P | F | I | 7. HEATING/PLUMBING | P | F | I |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 Present (Y) N | ✓ | | | 3.1 Present (Y) N | ✓ | | | 7.1 Heating equipment * | | | |
| 1.2 Electricity | | | ✓ | 3.2 Electricity | ✓ | | | 7.2 Safety of htg equipment | ✓ | | |
| 1.3 Electric hazards | | | ✓ | 3.3 Electric hazards | ✓ | | | 7.3 Ventilation/cooling | ✓ | | |
| 1.4 Security | | | ✓ | 3.4 Security | ✓ | | | 7.4 Water heater * | ✓ | | |
| 1.5 Window condition | | | ✓ | 3.5 Window condition | ✓ | | | 7.5 Water supply | ✓ | | |
| 1.6 Ceiling condition | ✓ | ✓ | • | 3.6 Ceiling condition | ✓ | | | 7.6 Plumbing | | | |
| 1.7 Wall condition | ✓ | ✓ | | 3.7 Wall condition | ✓ | | | 7.7 Sewer connection | ✓ | | |
| 1.8 Floor condition | ✓ | ✓ | | 3.8 Floor condition | ✓ | | | | | | |
| 1.9 Lead paint | ✓ | | | 3.9 Lead paint | | | | | | | |
| **2. KITCHEN** | P | F | I | 3.10 Ventilation | | | ✓ | **8. HEALTH/SAFETY** | P | F | I |
| 2.1 Present (Y) N | ✓ | | | | | | | 8.1 Access to unit | | | |
| 2.2 Electricity | ✓ | | | **5. 2NDRY ROOMS** | P | F | I | 8.2 Exits - (Fire) | ✓ | | |
| | | | | 5.1 None (go to 6) | | | | | | | |
| 2.3 Electric hazards | | | ✓ | 5.2 Security | | | | 8.3 Infestation –evidence | | | |
| 2.4 Security | ✓ | | | 5.3 Electric hazards | | | | 8.4 Garbage/Debris | | | |
| 2.5 Window condition | ✓ | | | 5.4 Other hazards | | | | 8.5 Refuse disposal | | | ✓ |
| 2.6 Ceiling condition | ✓ | | | **6. BLD EXTERIOR** | P | F | I | 8.6 Stairs/Halls/Commons | | | |
| 2.7 Wall condition | ✓ | ✓ | | 6.1 Foundation condition | ✓ | | | 8.7 Interior hazards | | | |
| 2.8 Floor condition | ✓ | ✓ | | 6.2 Stair/Rail/Porch | ✓ | | | 8.8 Elevators | | | ✓ |
| 2.9 Lead paint | ✓ | | | 6.3 Roof/Gutters | ✓ | | | 8.9 Air quality-Interior | | | ✓ |
| 2.10 Stove * | | | ✓ | 6.4 Exterior surface | ✓ | | | 8.10 Site & Neighborhood | ✓ | | |
| 2.11 Refrigerator | | | ✓ | 6.5 Chimney | ✓ | | | 8.11 Lead paint cert. | ✓ | | |
| 2.12 Sink | | | ✓ | 6.6 Lead paint ext. | ✓ | | | 8.12 Smoke alarms | ✓ | | |
| 2.13 Food storage | | | ✓ | 6.7 Tie downs N/A * | ✓ | | | | | | |

| 4. OTHER ROOMS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 4.1 Room code | ① | | ③ | | | | | | |
| 4.2 Electricity | I | | I | | | | | | |
| 4.3 Electric hazards | I | | I | | | | | | |
| 4.4 Security | I | | I | | | | | | |
| 4.5 Window condition | I | | I | | | | | | |
| 4.6 Ceiling condition | P | | P | | | | | | |
| 4.7 Wall condition | P | | P | | | | | | |
| 4.8 Floor condition | I | | I | | | | | | |
| 4.9 Lead paint | I | | I | | | | | | |

**Lead-Based Paint Hazards Checklist:**

1. When was the property built? 1965 (If after 1978 STOP here.)

2. Number of children under 6 years old. 0 (If zero STOP here.)

3. Did the unit "fail" due to deteriorated paint over the de-minimus levels?
_____ NO (STOP here and owner must correct defective paint w/out use of lead safe work practices.)
_____ YES (The owner must complete paint stabilization and use lead-safe work practices. COMPLETE & ATTACH lead-based paint hazards checklist form.

Bedrooms, Living room and kitchen are not accessible as there are boxes, items, etc. blocking these entrances. Most of these areas are inconclusive until the walkways are accessible.

Appears that that the boxes items etc. stored are not return. They are just storage type items throughout.

I told Claire we need to access each room and be able to test the outlets, switches, open windows and shut door. I also told her the items are inconclusive. She asked if they fail and I said they don't pass, but they do not pass either...

**PASS      FAIL      (INCONCLUSIVE)**

HRA Inspector: _____   Date: _____

## Fw: Reasonable Accommodation Request

From:  Claire Lee (claire.1957@yahoo.com)

To:    claire.1957@yahoo.com

Date:  Monday, November 27, 2023 at 05:12 PM CST

Sent from Yahoo Mail for iPhone

Begin forwarded message:

On Wednesday, October 26, 2022, 1:45 PM, Claire Lee <claire.1957@yahoo.com> wrote:

This is in response to your denial/refusal of my reasonable accommodation request to extend the deadline of my inspection so that I have more time to make my apt ready to pass inspection. As of this week, you are still forcing me to go ahead with the inspection on October 31 and at a time that does not work for me as I had already arranged for a support person to be there at 4 pm as a reasonable accommodation, but you are demanding that the time be between 10 and 12. You act as if the reasonable accommodation process is a game and one that you can use to throw barriers in front of me, rather than eliminate barriers — you use it to hinder rather than to help.

Attached is my doctor's request that you provide an extension for inspection of my apartment at least until January 31, 2023. (Please remember that this is a medical record as I am copying other individuals.) It would be much better for me to spare me this inspection altogether and combine this re-inspection with the next annual inspection in May 2023, as I have also requested in my previous request of last week. Had you not forced the inspection on June 30 and instead granted my May accommodation request of October 31 at the outset, I would have been able to be ready for inspection without needing this extension and would have been spared your illegal and retaliatory stoppage of my HAP and constant threats to me of loss of my housing and repeated threats and actions towards eviction from my landlord for nonpayment of the HAP that your agency owed. This caused a marked decline in my health and functioning and inability to work on my apt for this inspection.

As I have already informed you, HUD sent notices to HA's that told and encouraged the housing authorities that they MUST make reasonable accommodations when resuming inspections from the pandemic and this would have also included extensions of time past the June 30 deadline, if necessary, as a RA for the disabled person. You also could have obtained a waiver for me to be excused from the inspection due to my disability and for my covid-related reasons, but refused and failed to do that. You failed to reasonably accommodate by forcing an inspection on June 30 and also by not at least trying to get a waiver and also failed to reasonably accommodate by charging me the HAP and refusing to pay the landlord the HAP and further discriminated and retaliated by continuing this for several months after proof was provided to you that the HAP could never be abated for tenant deficiencies and was illegal and after HUD ordered you to make the payments, among other things. But now you are again failing to reasonably accommodate by your refusal to grant another extension and retaliating against me, because I complained to HUD about your illegal activities of refusing to pay my HAP and for other reasons and you clearly have animus against me because you were ordered to pay the HAP and you still refused to pay it some 20 days later, so that the landlord would continue to harass me for your own intentional misconduct.

HUD, along with federal and state law, has made it clear that you must reasonably accommodate people with disabilities if their request is reasonable and necessary for their disabilities and for them to live more successfully in their homes. This extension of time I have requested is both necessary and reasonable and you don't have any lawful or legitimate reason not to grant it.

An accommodation must be granted unless the accommodation would cause a fundamental change in the nature of your program or unless it is unduly burdensome. My accommodation request does neither.

My accommodation request does not change the nature of the Section 8 program because you have already had the initial yearly inspection and I am not refusing a re-inspection or to organize my apartment. I am simply asking for more time due to my disabilities and HUD requires housing authorities to make reasonable accommodations and adjustments

to rules and policies in their programs and services for people with disabilities who need RA and the statute for inspections even provides that extensions may be granted to correct deficiencies. Furthermore, the nature of your program is providing housing subsidies to poor, disabled and senior families and my accommodation request would not change or alter that at all, not even a little bit.

My accommodation request is also not unduly burdensome according to the attached criteria defining burdensome by HUD and the DOJ. Attached are pertinent parts of their joint statement regarding reasonable accommodations. To address exactly the criteria listed to define burdensome, this is my response: 1) Cost - There is no real cost of this accommodation. In fact, the housing authority would save money if the re-inspection was consolidated with the May 2023 inspection and then the resources of the inspector could be used for other inspections. 2) Financial Resources - Your Section 8 financial resources are vast (in the millions) and very secure with this accommodation request, so my request does not affect or hurt that and requires no monetary output to implement. 3) Benefits to the requester - The benefits of this RA to me, the requester, are many as it would help my disabilities/health to work at a slower pace and to get this done, it would help and allow me time to get the medical help I need, it would help me comply with your rules to pass inspection and correct deficiencies and it would benefit me to retain my housing and subsidized voucher and to have stable housing, because I cannot afford housing without the voucher and I likely would go homeless, among many other things. The benefit to me of this RA and of continued subsidized housing far outweighs any tiny burden the housing authority might have implementing the RA/extension of time. 4) Availability of alternative accommodations to meet needs - The availability of any alternative accommodations would need to come through interactive process which you have refused to have since you denied the accommodation outright and instead essentially threatened me with the loss of my services/voucher/housing and you demanded inspection on October 31, offering no help or any alternative accommodation or interactive process. This certainly shows bad faith.

I have not committed a breach of any of the listed HQS standards, so please tell me specifically on what grounds you would even have to terminate my services/voucher.

Please tell me with specificity all of your reasons for refusing my accommodation request for an additional extension of time and tell me why granting my RA would be unduly burdensome or be a fundamental alteration of the Section 8 program you administer for HUD.

You have inspected my apartment and the inspector did not see any infestations or detect any odors. He commented that there was no garbage and just personal property in the way of inspecting outlets, etc. Consequently, the only health and safety hazard there would be to me is of having property blocking the entry/exits. If that is your concern, I could take a picture of the area around my front door since that is my only egress and I could send you this on or by October 31 showing that the area is clear of clutter or property and that should satisfy that concern, as HUD has encouraged and allowed virtual inspections and/or pictures as a substitute for in-person inspections since the pandemic. I live on the 2nd floor, so unless you want me to jump out a window to exit my apartment, my windows are not a health and safety hazard. For 25 years of annual Section 8 inspections, I have never had an outlet that didn't work or any window problems and cannot recall ever needing or being written up for a necessary repair. I passed every inspection until I moved to Bloomington and the previous HRA inspectors always commented what a nice and clean apartment I had.

The HQS and inspection section of the HCV Statute 982 allows for extensions of time to correct deficiencies for all recipients, so there is no legitimate reason not to grant this accommodation request for me unless you want to cause me problems. It clearly appears that your purpose is for me to fail the inspection, since I have told you that due to my health I can't be ready, and that you believe that would give you grounds to terminate my voucher and housing so you would proceed with initiating those actions. That should never be your goal and you are abusing your authority, abusing your discretion and retaliating against me by refusing this accommodation and also in not entertaining any alternative ways in which you could help me.

At my doctor appointment yesterday, my health is so poor that my doctor expressed concerns that I could need hospitalization now. I told her that I could not even entertain that because if I'm not able to at least try to get some things done and be at the inspection on Monday, then the housing authority will take action against me to take my home, my voucher and cause me to go homeless. This is now going to be very problematic for me to get anything done, because you and your punitive actions over the past 6 or so months have paralyzed me with fear and depression. You have not only exacerbated my health problems, but you are standing in the way of my getting necessary medical care.

Please respond to this within 24 hours with the specificity requested and please grant my reasonable accommodation request for an extension of time and/or cancel the Monday inspection to allow for interactive process and for me to get the medical care that I need. Thank you.

◀ Safari ▪▫▫ LTE      11:55 AM      13% ▢

Done    🔒 ealthpartners.com   AA   ↻

 Print this page | Close this window


HealthPartners·
Park Nicollet·

Legal name: Claire J Lee | DOB: 6/5/1957 | MRN: 92007595 | PCP: Clinician Non PN, MD

# Letter details

 Park Nicollet·

3800 Park Nicollet Blvd.
Saint Louis Park, MN 55416
Dept: 952-993-3307

10/25/22

TO WHOM IT MAY CONCERN:
RE: Claire J Lee
DOB: 6/5/1957

Ms. Claire Lee is currently under my care at Park Nicollet Clinic for treatment of her mental health disorders. She has been under my care since 2008. Her conditions impact her day to day functioning.

When she is under high levels of stress her ability to function is further impacted. She has been very stressed and concerned about the non-payment of her housing assistance subsidy and the potential of losing her housing. She has received multiple eviction notices for non-payment of the subsidy which has further increased her level of distress. She has been trying to address and resolve this issue. She has experienced a significant exacerbation of her mental health symptoms in the setting of these housing stressors. She is severely anxious and depressed. She has not been sleeping well. Her ability to focus and organize has been further diminished secondary to these stressors. She has had difficulty completing tasks in an efficient and timely manner. Her overall ability to function in her day to day tasks has been greatly decreased.

Due to her current increased level of mental health symptoms, distress and associated impairments in functioning related to the current housing stressors she has been unable to complete the tasks necessary for the current inspection deadline of October 31, 2022. **We request a reasonable accomodation to extend the deadline for the housing inspection until at least January 31, 2023.**

Sincerely,

Kimberly A Fitch, MD
Psychiatrist
Electronically signed by provider





Posted and Via Email

October 31, 2022

Claire Lee
10101 Lyndale Avenue South
Apartment 219
Bloomington, MN 55420

RE Attempted HQS Inspection

Dear Ms. Lee:

The Housing and Redevelopment Authority in and for the City of Bloomington (HRA) has
attempted to inspect your unit on Monday, October 31, 2022, per the schedule provided. Due to
the nature of the last inspection that was inconclusive for health and safety items we need to
complete an inspection no later than Tuesday, November 1, 2022, by 2:00 pm; this is 24 hours. If
the HRA is not able to inspect this unit, we will need to terminate your participation in the
program due to non-cooperation. If you are not available to be present, please arrange for a
representative and/or provide permission to your landlord for access.

Sincerely,

Aarica L. Coleman
HRA Administrator

BLOOMINGTON HOUSING AND REDEVELOPMENT AUTHORITY
1800 W. OLD SHAKOPEE ROAD, BLOOMINGTON MN 55431-3027
PH 952-563-8937  FAX 952-563-4977 MN RELAY 711

AN AFFIRMATIVE ACTION/EQUAL
OPPORTUNITIES EMPLOYER

# HQS INSPECTION FORM

**Inspection Type:**   Initial-LIP    Initial M/I    Re-exam LIP    ~~M/I~~    Audit

**A. GENERAL INFORMATION**    BR size:  1 ②3 4 5    Hsg Type:  (APT)  DP  TH  SF  DB

Inspection Date:  10 31 22    Re-Exam Date:  7 1 22

Tenant: Claire Lee
Address: 1010 Lyndall Ate #219
Phone # _____
Owner's Name: Lyn Villa

P = PASS
F = FAIL
I = INCONCLUSIVE

**B. Check List:**   Room Codes:  1=BR  2=DINING RM  3=2ND LIVING RM  4=HALLS  5=ADD'L BATHRM  6=OTHER

| 1. LIVING ROOM | P | F | I | 3. BATHROOM | P | F | I | 7. HEATING/PLUMBING | P | F | I |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 Present (Y) N | | | | 3.1 Present (Y) N | | | | 7.1 Heating equipment * | | | |
| 1.2 Electricity | | | | 3.2 Electricity | | | | 7.2 Safety of htg equipment | | | |
| 1.3 Electric hazards | | | | 3.3 Electric hazards | | | | 7.3 Ventilation/cooling | | | |
| 1.4 Security | | | | 3.4 Security | | | | 7.4 Water heater * | | | |
| 1.5 Window condition | | | | 3.5 Window condition | | | | 7.5 Water supply | | | |
| 1.6 Ceiling condition | | | | 3.6 Ceiling condition | | | | 7.6 Plumbing | | | |
| 1.7 Wall condition | | | | 3.7 Wall condition | | | | 7.7 Sewer connection | | | |
| 1.8 Floor condition | | | | 3.8 Floor condition | | | | | | | |
| 1.9 Lead paint | | | | 3.9 Lead paint | | | | | | | |
| 2. KITCHEN | P | F | I | 3.10 Ventilation | | | | 8. HEALTH/SAFETY | P | F | I |
| 2.1 Present (Y) N | | | | | | | | 8.1 Access to unit | | | |
| 2.2 Electricity | | | | 5. 2NDRY ROOMS | P | F | i | 8.2 Exits - (Fire) | | | |
| | | | | 5.1 None (go to 6) | | | | | | | |
| 2.3 Electric hazards | | | | 5.2 Security | | | | 8.3 Infestation –evidence | | | |
| 2.4 Security | | | | 5.3 Electric hazards | | | | 8.4 Garbage/Debris | | | |
| 2.5 Window condition | | | | 5.4 Other hazards | | | | 8.5 Refuse disposal | | | |
| 2.6 Ceiling condition | | | | 6. BLD EXTERIOR | P | F | I | 8.6 Stairs/Halls/Commons | | | |
| 2.7 Wall condition | | | | 6.1 Foundation condition | | | | 8.7 Interior hazards | | | |
| 2.8 Floor condition | | | | 6.2 Stair/Rail/Porch | | | | 8.8 Elevators | | | |
| 2.9 Lead paint | | | | 6.3 Roof/Gutters | | | | 8.9 Air quality-Interior | | | |
| 2.10 Stove * | | | | 6.4 Exterior surface | | | | 8.10 Site & Neighborhood | | | |
| 2.11 Refrigerator | | | | 6.5 Chimney | | | | 8.11 Lead paint cert. | | | |
| 2.12 Sink | | | | 6.6 Lead paint ext. | | | | 8.12 Smoke alarms | | | |
| 2.13 Food storage | | | | 6.7 Tie downs N/A * | | | | | | | |
| 4. OTHER ROOMS | | | | | | | | | | | |
| 4.1 Room code | I | I | | | | | | | | | |

**Lead-Based Paint Hazards Checklist:**

| 4.2 Electricity | | | | |
|---|---|---|---|---|
| 4.3 Electric hazards | | | | |
| 4.4 Security | | | | |
| 4.5 Window condition | | | | |
| 4.6 Ceiling condition | | | | |
| 4.7 Wall condition | | | | |
| 4.8 Floor condition | | | | |
| 4.9 Lead paint | | | | |

1. When was the property built?  Pre 1978 (or after 1978 STOP here.)

2. Number of children under 6 years old.  Ø  (If zero STOP here.)

3. Did the unit "fail" due to deteriorated paint over the de-minimus levels?
_____ NO (STOP here and owner must correct defective paint w/out use of lead safe work practices)
_____ YES (The owner must complete paint stabilization and use lead-safe work practices.  COMPLETE & ATTACH lead-based paint hazards checklist form.

NO answer.  & KNocked several times





## RE: Cancel inspection today

From: Coleman, Aarica (acoleman@bloomingtonmn.gov)

To: claire.1957@yahoo.com

Cc: mdobbins@landrumdobbins.com; rlanderson@BloomingtonMN.gov

Date: Monday, October 31, 2022 at 11:41 AM CDT

Ms. Lee,

We did knock on your door today at 11:15 am, as previously communicated that your HQS inspection would be between 10:00 – 12:00pm. However, due to the nature of the previous inconclusive inspection and the information provided below providing that there are health and/or safety concerns, this inspection has failed. Please comply with the attached letter and have a representative available or provide permission to the landlord for access for the inspection to occur tomorrow, Tuesday, November 1, 2022 between 12:00-2:00pm.

Enclosed:
Formal letter
HQS Inspection form
Picture of items left at residence



**Aarica L. Coleman**
HRA Administrator
**PH:** 952-563-8940 **CELL:** 612-357-9183
*Please take HRA's customer experience survey:*
https://blm.mn/HRAsurvey

**From:** Claire Lee <claire.1957@yahoo.com>
**Sent:** Monday, October 31, 2022 7:54 AM
**To:** Coleman, Aarica <acoleman@BloomingtonMN.gov>; Mary Dobbins <mdobbins@landrumdobbins.com>; Anderson, Robin L <rlanderson@BloomingtonMN.gov>
**Subject:** Cancel inspection today

I am in the ER now and am being hospitalized. I was doing cleaning up for the inspection and was putting boxes on top of the other boxes in my DR to make room for a pathway and those and others came down on top of me and some were heavy and so I am in a lot of pain. It also broke my glasses so I'm having trouble seeing. These were boxes that I had planned on going through and throwing, but I was forced to go too fast.

Sent from Yahoo Mail for iPhone

 Clee 10312022 HQS.pdf
110.6kB

 CLee 10312022 HQS form.pdf
173.5kB

 CLee 10312022.jpg
3.1MB

 **Claire Lee** · am in the ER now and am being hospitalized. · was doing cleaning up for the inspection and was putting boxes on top of the other boxes in my DR to make room for a ba...   Mon, Oct 31, 2022 at 7:56 AM ☆

 **Coleman, Aarica** <acoleman@bloomingtonmn.gov>
To: Claire Lee
Cc: Mary Dobbins, Anderson, Robin L

   **Mon**, Oct 31, 2022 at 11:41 AM ☆

Ms. Lee,

We did knock on your door today at 11:15 am, as previously communicated that your HQS inspection would be between 10:00 – 12:00pm. However, due to the nature of the previous inconclusive inspection and the information provided below providing that there are health and/or safety concerns, this inspection has failed. Please comply with the attached letter and have a representative available or provide permission to the landlord for access for the inspection to occur tomorrow, Tuesday, November 1, 2022 between 12:00-2:00pm.

Enclosed:
Formal letter
HQS inspection form
Picture of items left at residence


**Aarica L. Coleman**
HRA Administrator
PH: 952-563-8940 CELL: 612-357-9183
*Please take HRA's customer experience survey:*
https://blm.mn/HRAsurvey


Show original message
 Download all attachments as a zip file

    

CLee 103120l...pdf    CLee-103120...pdf    T Lee 10312022.jpg

 **Claire Lee** - state 1957 (Dvor pd rich))

To: Karla Henderson

Cc: mmanderschied@bloomingtonmn.gov

Bcc: Claire Lee



t is my belief that I have been charged approximately $75/mo too much on my Section 8 rent since I moved here in 2016 — by possibly as much as $5000. I have asked for a showing of how my rent was calculated, but it has not been provided to me.

HRA is aware that I receive a monthly payment of $250/mo from a small inheritance that my father left me when he died. Due to my disability, I receive a monthly check instead of getting a lump sum payment. This method of payment was designed to help and ameliorate my disability by not giving me access to all of the money at once and having it managed by a third party. I have the same situation with my SSDI because of my disability in that it goes to a representative payee, and they pay my bills and send me the rest to spend. My disability causes me to not manage my money well at times.

Because HRA has known that this money comes to me this way as a direct result of my disability and knows that I have a representative payee as a result of my disability, this money should have been treated as a lump sum asset, rather than monthly income. Obviously it is an asset because it is an inheritance and HRA should have reasonably accommodated me or otherwise somehow waived this payment, instead of charging me 30% of it every month. I should not have been penalized just because of the disability related method in which I receive it.

A non-disabled person who receives the same money but in a lump sum only has to pay the interest on it and not 30% of it in higher rent like I do and it is very unfair and discriminatory to charge me almost 30 times more than persons without disabilities who are able to receive theirs in lump sums — all because of my disability and people should never be penalized solely because of their disability

While the rules do say that monthly trust checks can count as income, there are always situations and exceptions where following the rules and not providing reasonable accommodation or treating people all the same when clearly you shouldn't can still be discrimination. In addition, this is clearly discriminatory and the amount of money I would be reimbursed is only a very tiny fraction of the amount HRA receives for subsidies

It has been very distressing to me to see a large part of my inheritance taken away from me and my father would be devastated if he knew this was happening. I really have needed that money, especially for car repairs and a recliner, due to health problems I have been having

Please reimburse me immediately the total of excess money from this $250 that I have been forced to pay as my share of the rent for Section 8. You should also reimburse interest on it

I can't communicate with Bryan Hartman like you requested, because he was instrumental in the discrimination I suffered at getting my voucher ported to Bloomington. Richfield granted my reasonable accommodation for my voucher, but Bloomington inexplicably for no good reason did not. A day or so after Mr. Hartman got enraged at me and threatened me that he could take away my voucher (just because I was very anxious due to my disability and called every day to see if they had made a decision yet) they denied my reasonable accommodation, knowing that I was disabled and would go homeless in about two weeks. Bloomington HRA then immediately contacted this landlord and told them they would not approve this apartment and my landlord rented this apt to someone else even though I had a signed lease. I was so despondent and panicked that I attempted suicide and was hospitalized for several days. Bloomington also did not engage in any interactive process with me before denying the RA. Vocational Rehab helped me call the Mpls HUD office and they and the HUD Director intervened on my behalf, so I eventually got this apartment, but not until I had suffered severe and permanent harm. I have PTSD from this experience — I was first thrown out of my housing of 20 years due to the Crossroads gentrification and then Bloomington took my housing from me that I worked so hard to get and discriminated and took adverse action in an unconscionable, egregious and unlawful manner. What really distressed me was that they knew I would go homeless and I was disabled and they didn't care. I have not recovered at all from this and this is the cause of many difficulties/problems (social, psychological and physical) I have since then

I will be filing a discrimination complaint within the next few days regarding several issues and occurrences possibly 4 or 5.

Please contact me if you have any questions or would like to discuss any of this. Please contact me within 3 days about the Section 8 reimbursement. Thank you

 Park Nicollet

3800 Park Nicollet Blvd.
Saint Louis Park, MN 55416
Dept: 952-993-3307

05/17/22

TO WHOM IT MAY CONCERN:
RE: Claire J Lee
DOB: 6/5/1957

Ms. Claire Lee is currently under my care at Park Nicollet Clinic for treatment of her mental health disorders. She is disabled by her conditions and has required and continues to require reasonable accommodations. She is significantly impaired by her conditions. They interfere with her ability to organize and she is easily overwhelmed. She has been notified of her upcoming housing inspection which is now due by May 31, 2022. **She will need a reasonable accomodation to extend the deadline for the housing inspection until October 31, 2022.** She continues to be very fearful of COVID and is extremely anxious when she has people in her apartment. Due to ongoing and recent symptoms she is slower to complete tasks and needs to pace herself so that she does not exacerbate medical or mental health conditions. She also has extreme fears around the inspection process due to anxiety around housing insecurity and fear of losing her housing. She has set reasonable goals to complete necessary tasks to prepare for her inspection by the October 31st date.

Due to her conditions she requires two weeks notice prior to any visits to her home. She will not be able to tolerate unannounced visits to her apartment or having others enter her apartment when she is not present except in the case of extreme emergencies. These have been ongoing accommodations that we have had in place in order to help her to manage her mental health symptoms.

Sincerely,

Kimberly A Fitch, MD
Psychiatrist
Electronically signed by provider

CASE 0:23-cv-03652-SRN-DJF   Doc. 9-1   Filed 11/28/23   Page 34 of 47



# BLOOMINGTON RENTAL HOUSING COLLABORATIVE
# NEWSLETTER
## FOR RENTAL PROPERTY OWNERS AND MANAGERS

**December 2019**
**Bloomington HRA**

**Phone**
952-563-8937

**MN RELAY**
711

**Fax**
952-563-4977

*The City of Bloomington does not discriminate on the basis of disability in the admission or access to, or treatment or employment in, its services, programs, or activities.*

*Upon request, accommodation will be provided to allow individuals with disabilities to participate in all City of Bloomington services, programs, and activities.*

*Upon request, this information can be available in Braille, large print, audio tape and/or electronic format.*

## THE NEXT MEETING IS ON DECEMBER 12!

All rental housing owners, managers, leasing agents, maintenance staff and other interested parties are encouraged to attend this free Bloomington Rental Collaborative Meeting. This next meeting will take place on **Thursday, December 12, 2019, at 9 a.m., in the Haeg Room at Bloomington Civic Plaza, 1800 West Old Shakopee Road.** If you have any suggestions for future newsletter or meeting topics, please contact Kathy Warren at 952-563-8942; MN RELAY 711 or e-mail kwarren@bloomingtonmn.gov

*December Meeting Topic: Addressing Tenants Who Hoard - Emily Cheesebrow, Resident Support Specialist with Thies and Talle Management, will discuss her experience working with tenants who hoard. (Additional social service staff will be present to assist with discussion and resources.)*

## HOARDING OFFICIALLY RECOGNIZED AS A MENTAL DISORDER

The American Psychiatric Association (APA) has recently defined Hoarding as a disorder and confirmed what property management companies, owners and Fair Housing practitioners have already known: hoarding is a mental disorder and a protected class. Hoarding has long been considered a disability under Fair Housing laws, and the APA's recognition of it as a mental disorder effectively cements this understanding. Now more than ever, hoarders – who are on the same list of disorders that includes Post Traumatic Stress Disorder (PTSD) and Autism Spectrum Disorder – should be treated by property management teams the same as others with mental disabilities. If not treated as such, the property could be subject to penalties and fines for being out of compliance with fair housing laws.

Hoarding has been a hot topic in the property management industry, and is prodding many apartment associations and property owners to seek answers and training to deal with an age old disorder that has gone mainstream. At a recent National Apartment Association Education Conference held in Boston, hundreds attended a meeting to learn about how to handle residents with hoarding tendencies and work within Fair Housing laws. The recent DSM-5 classification punctuates the need for properties to use caution and common sense to try and remedy a delicate situation.

### RESIDENT RETENTION: 4 TIPS FOR HELPING HOARDERS

Property management teams should take a proactive but cautious approach when working with a resident who hoards. Because the situation is considered a mental disability, landlords should generally try to accommodate first. That means closely working with the hoarder to try to find a way to retain residency. Developing and recommending mutual goals might remedy the situation.

Here are some suggested goals to keep in mind when dealing with a hoarder:

1.	Initiate and accommodate. Hoarders don't usually ask for accommodation. In fact, many are secretive and their disorders go unnoticed until a neighbor complains or maintenance has to enter the apartment to make repairs. While hoarders should ask for an accommodation, Fair Housing law trends suggest that if a landlord knows or should have known about the disability then there is a duty by the property to accommodate. The cost to hire attorneys to defend a Fair Housing complaint can be expensive, especially if a fair housing enforcement agency finds that the owner should

**CONTINUE ON NEXT PAGE: HOARDING**



EQUAL HOUSING OPPORTUNITY

*Bloomington Housing and Redevelopment Authority*     *1800 West Old Shakopee Road Bloomington, MN 55431*
*E-mail: hra@BloomingtonMN.gov*     |     *website: BloomingtonMN.gov*

## CONTINUED FROM PAGE 1: HOARDING

have tried to accommodate before taking steps to evict. Thus finding an ongoing and workable process to minimize issues is optimal. Be rational, practical and patient in this situation.

2. Avoid eviction. Consider all avenues to avoid evicting the hoarder, including creating and monitoring a plan for the resident to clean up the apartment. The cost for the hoarder or someone close to the situation to clean up an apartment is far less than if the property has to contract for it. Removing belongings (which can include hazardous materials removal) can cost $10,000-$30,000.

3. Create reasonable and safe expectations. Prepare for a long road ahead to the end goal, which needs to be outlined in a written agreement and monitored. For a successful outcome, strive for creating a safe and sanitary environment in the apartment. Don't expect the end product to be resemble a page out of a house design magazine.

4. Document the eviction process (if necessary). If the plan doesn't work, the only real option may be eviction. About 39 percent of hoarders succeed with the professional assistance. If the hoarder simply can't or won't comply after reasonable efforts have been make to resolve the situation, property managers and owners should be prepared to defend their case. Document, document, document!

The DSM-5 designation confirms what the multifamily industry has already know about handling hoarders. More importantly, it serve as a reminder that hoarders should be treated the same as other residents with disabilities. Ensure your community stays in compliance with ADA and Fair Housing laws by taking each case very seriously.

*Portions reprinted from April 2017 edition of Property Management Insider*

# PREPARE FOR FALL BY CHECKING CARBON MONOXIDE DETECTORS AND APPLIANCES

As temperatures continue to fall, the Minnesota Department of Health (MDH) reminds us to take action to prevent carbon monoxide poisoning. Carbon monoxide poisoning send about 372 people to the emergency room in Minnesota during 2017, according to date from the Minnesota Environmental Health Tracking Program. These trips to the ER for carbon monoxide poisoning are preventable when people are prepared.

### TO BE PROTECTED FROM CARBON MONOXIDE POISONING, FOLLOW THESE SAFETY TIPS:

1. Make sure you have working carbon monoxide detectors. Detectors can be purchased at most hardware and big box stores. The change from Daylight Savings time to Standard Time is a good time of year to replace batteries in you detectors and push the "test" button to be sure it's working

properly. Replace your detectors every five years or according to manufacturer's instructions.

2. Have furnaces and wood-burning stoves inspected annually. Hire a professional to make sure it is functionally sound and vents properly outside the home.

3. Never run gas or propane heaters or a grill inside a home or unventilated garage. Any heating system that burns fuel produces carbon monoxide. Use a battery powered detector where you have any fuel burning devices but no electrical outlets.

4. Generators should be run at a safe distance (at least 20 feet) from the home. Never run a generator in the home or garage, or right next to windows or doors.

5. Never allow a car to run in an enclosed space. If a car needs to idle, have it backed out of the garage, including underground garages.

# FIND BLOOMINGTON RENTAL COLLABORATIVE ON THE WEB

For more local information about housing, check out our website at www.bloomingtonmn.gov, and search "Rental Housing Collaborative." Updated Bloomington Rental Collaborative meeting times and topics can always be found here.

*Bloomington Housing and Redevelopment Authority* | *1800 West Old Shakopee Road Bloomington, MN 55431*
*E-mail: hra@BloomingtonMN.gov* | *website: BloomingtonMN.gov*

**PREMIER PROPERTIES, LLC**
Post Office Box 390195
Edina, Minnesota 55439-0195
(952) 941-2400 FAX (952) 941-241_

May 25, 2022

Dear Claire Lee:

I received an email from you on May 23, 2022 in the morning that you called "reasonable accommodations". You listed accommodations that you said you need "due to my disabilities." You stated you needed:

1. No unannounced visits to my door/apartment.
2. Appointments for all visit/repairs to my apartment (at least 2 weeks' notice)
3. No one can enter my apartment without authorization unless I am present.

You stated the only exception for these demands would be in case of extreme emergency, such as fire or flood and wrote that these have previously been requested.

You also wrote that you filed a discrimination complaint, but it had not been processed yet.

I do not believe the requests you are making are reasonable, or are necessary for any disability or disability related need.

Throughout Covid, we were exceptionally patient working with you and your various health conditions or disabilities, as well as your concerns about exposure to Covid. As we worked to upgrade and improve the safety of our electricity at the building, we scheduled your work to be the absolutely last work done. It was only after postponing the work as long as possible, that we finally told you that we would need to have access to your unit.

Currently, you have told us that you need and want repair work done on your wall. As of the end of April, 2022, you stated that you wanted to wait to do the wall repair until at least 30 days after the electrical work was completed.

We will agree to hold off on scheduling the wall repair until you notify us of a timeframe when the work can be done. That repair is largely for your benefit and to have an apartment that is attractive, and in good repair.

We have not agreed, and do not agree, to only enter your apartment with two weeks advance notice and scheduling. Your lease requires that you cooperate with our reasonable need to enter your apartment for purposes of inspections, repairs, maintenance, and potentially showing the unit to any lender, or to cooperate with the city of Richfield or the HRA. Minnesota law gives landlords a right to enter after reasonable notice based on the circumstances.

I was surprised and disappointed by your claims of discrimination given the efforts I have personally made to work with you in the past. Back in February of this year, you stated you had some "discrimination complaint against the property and some people (managers, etc.)." We do not believe we have done anything to subject you to any kind of discrimination based on any of the state or federal fair housing laws or have failed to make any reasonable accommodation.

If we receive a discrimination complaint or charge filed with HUD or the Minnesota Department of Human Rights, we will refer it to our legal counsel Hanbery and Turner, P.A. To date I have tried to avoid hiring legal counsel to respond to any of your requests or concerns. But your most recent demands for never coming to your door or apartment, "unannounced", or only entering with two-week advance notice, do not appear reasonable or reasonably related to any disability.

I will hope that you change your mind on this announced and threatened discrimination complaint. You are certainly free to pursue any complaint you think is appropriate and we will have our legal counsel handle it as required by law. But I believe the records of our communications and efforts to work with you and your concerns about allowing access or work in your apartment, and the extended period of time you requested during Covid before needed work could be done in your unit, would demonstrate that we have treated you in a fair and non-discriminatory manner, and have already made numerous accommodations for you.

Please reach out to us when you are ready to have a schedule the work to be done to repair the wall.

Sincerely,

Andrew B. Akins
Premier Properties

| LANDRUM | |
|---|---|
| **DOBBINS** LLC | ATTORNEYS AND COUNSELORS AT LAW |

**MICHAEL A. LANDRUM**
612-868-8730
952.446.1386 Fax
mlandrum@landrumdobbins.com

**MARY G. DOBBINS**
952.893.2925
952.893.2939 Fax
mdobbins@landrumdobbins.com

Via email

June 20, 2022

Claire Lee
10101 Lyndale Avenue South
Apt. 219
Bloomington, MN 55420

RE;   Request for Accommodation

Dear Ms. Lee:

You will recall that I represent the Bloomington HRA. I am writing in response to your emails and recent contacts with officials at HUD.

First, I would like to respond to your questions regarding the HRA's position that the HQS inspection of your unit must be completed by June 30, 2022. As has been repeatedly explained, the June 30th deadline is imposed by HUD and is due to the fact that your unit was scheduled to be inspected in 2020, but that inspection was delayed by COVID. According to directives received from HUD, inspections delayed from the 2020 fiscal year must be completed by June 30, 2022. Your unit fits within that category. The HRA does not have the authority to delay or ignore that HUD directive.

While the HRA is certainly hopeful that your unit will pass the inspection, if the unit fails inspection, a re-inspection will need to be scheduled and completed. If the unit fails due to a 'tenant fail' then the HRA will not make voucher payments until the unit is re-inspected and successfully passed as required by HUD regulations; the full rent is the responsibility of the housing choice voucher participant during this interim period. If the unit fails due to an 'owner fail' then the HRA will notify the owner that voucher payments will not be made until items are corrected, unit re-inspected and passed, again as required by HUD regulations.

You have asked about the schedule for inspections going forward. Under its HUD approved Administrative Plan, the HRA conducts annual inspections. The next inspection of your unit will be conducted with the annual recertification process in 2023.

If you are in need of additional resources for assistance that offer services for housekeeping and navigation services, the HRA would recommend contacting the following agency that provides such assistance to residents who are 60 years and older.

- o Senior Community Services
  952-746-4046
  www.seniorcommunity.org

W: Attached Image  

 **Andrew Akins** - andrewa@premierapts.com -
To: Claire Lee
Cc: rlanderson@bloomingtonmn.gov

 Wed Sep 14 2022 at 11:23 AM

aire, attached is your "Tenant Ledger" showing the $2,226.00 owed for apartment 219.  I spoke to Robin Anderson at Bloomington HRA this morning and she said  you apartment has not passed inspection.  I also
arned that HRA will not pay there portion of the rent for the months of July, August and now September since the apartment has not passed the required inspection.
do not know why but Hennepin county has also refused to make any payments.  Our office has work with Hennepin county with many other residents and maybe could help with this process or you could call 211
r assistance.
can not let this continue to build.   Please contact me immediately on what are you intentions to get this paid for now and in the future.  If I don't hear from you or don't you can't give me a good answer on how
ou intend to get this paid.  I will be forced to start eviction proceedings next week.
ndy Premier Properties

om: premier2400@gmail.com <premier2400@gmail.com>
ent: Wednesday, September 14, 2022 10:33 AM
o: Andrew Akins <andrewa@premierapts.com>
ubject: Attached Image



77_001.pdf
6 MB



  **Andrew Akins** <andrewa@premierapts.com>
To: Claire Lee
Cc: rlanderson@bloomingtonmn.gov

 Mon Sep 13 2022 at 11:20 AM

aire, since you did not respond I will begin the eviction process tomorrow.  Andy

 Show original message

## Fw: Attached Image

From:  Claire Lee (claire.1957@yahoo.com)

To:    claire.1957@yahoo.com

Date:  Monday, November 27, 2023 at 03:02 PM CST

Sent from Yahoo Mail for iPhone

Begin forwarded message:

On Monday, September 19, 2022, 4:00 PM, Claire Lee <claire.1957@yahoo.com> wrote:

I apologize but I did not get your email last week or I would have responded immediately as I am extremely fearful of losing my home. Some of my emails go directly to spam if yahoo thinks they look suspicious.

I communicated with Zach immediately after I was sent an eviction notice a few weeks ago and he said that nothing would be done about this as I said that this might not be resolved until November.

It is illegal for the Bloomington Housing Authority to not pay my rent. According to the HUD manual/guidelines, housing assistance payments can NEVER be abated for any tenant deficiencies, such as a failed or inconclusive inspection and they are allowed to grant extensions for inspections and deficiencies, which means that they must still pay the rent.   I do not understand why they are not paying rent as they are absolutely obligated to under the law, except that it is retaliatory. Further, I am not even allowed under HUD rules to pay more than my share of tenant rent to the landlord and that is a violation for which I can be punished for, which is further confirmation of the HUD rule that forbids abatement of the HAP for tenant deficiencies.

I have asked for and gotten reasonable accommodation from the housing authority until October 31 to work on my apt and rearrange my personal belongings so that outlets can be inspected, etc.  I have had medical problems that contributed to this, along with other reasons, such as the pandemic and the treatment I received from both you and the housing authority, which greatly exacerbated my physical and mental conditions. Their payment of rent should have also gone along with that accommodation, but they are still refusing. I have called other housing authorities and Bloomington is reading the statute incorrectly and violating HUD rules.

If I pay the rent through other sources, I could be jeopardizing my voucher by violating the rules. Also, I may likely be charged 30% of any help I get as income and it will be added to the rent I pay, so I will pay 30% more in rent.

As you know, I have filed a HUD complaint against you/your company and also the housing authority for some of the discriminatory treatment and their failure to pay my rent. It is still being processed. I plan to call them this week and see if I can get any action/response and alert them to the eviction plans. I am a very good tenant who has always paid their rent on time. I have a letter from the previous housing authority that states that my apartment upkeep was outstanding and spotless. The way I was treated from before and from the onset of getting this apartment has contributed greatly to my problems. I was involuntarily displaced from my previous apt of 20 years (where I also never paid rent late) due to the Crossroad's property gentrification and their discontinuation of Section 8 and then had problems finding housing due to 2000 people being displaced at the same time and I was very excited to find this place and had a signed lease and then both this housing authority and your company took this apt away from me and were going to allow me to go homeless in just days. HUD intervened on my behalf and I ultimately got this place, but I have never recovered from that and as a result, I have diagnosed PTSD and extreme fears of losing my housing and going homeless. This has caused me to not finish unpacking, severe depression and has brought great distress and disruption to my life and problems with disorganization, among other things. It caused me a lot of problems and issues with self esteem, constant worry, OCD and profound apathy, etc.

I am working with Hennepin County and am scheduled to have a visit this week for help on organizing and getting my apt ready for inspection. There is no condition in my apartment that affects the health or welfare of any tenants and there never was and there is no property damage. The County is still looking into whether they can pay 2 months rent and if another organization can pay the other 2 months. I have been in regular communication with them. However, it is against the rules for me to pay or be charged more than my tenant rent, so that is something that stands in the way and also helps to confirm that the rent cannot be abated for tenant deficiencies. It can't be abated because the landlord should not be charged or penalized for something other than their deficiencies and because the program exists solely to pay housing subsidies so that disadvantaged and disabled people can afford the rent. Not paying the HAP violates the core principles of the program and the very reason why the program exists and it has already been established that I can't afford full rent or otherwise I wouldn't be in the program. The Housing Authority has to reasonably accommodate disabled people and paying the rent is also part of the accommodation, even if they weren't already obligated under the law to pay the HAP.   Otherwise it leads to the absurd result where I am getting accommodation to keep my apartment and the landlord doesn't get paid by the HRA and so I lose the apartment.  That isn't the way reasonable accommodation is supposed to work.
 Reasonable accommodation is supposed to put the disabled person in a better position to live successfully in their apartment, not to punish and take their home from them or to charge the disabled person $3000 for an accommodation, particularly when it is in violation of the law.

The statute has never allowed or anticipated any abatement of rent for tenant deficiencies due to the complete reading of all of the provisions of the statute. It makes clear that only the landlord can be assessed abatements if they don't correct deficiencies. It does not allow for the landlord to be deprived of their rent for something the tenant has caused, unless the landlord refuses to fix it. This is also because it has always been considered guaranteed rent for the landlord from the government, which is a selling point for landlords to participate. The Housing Authorities are supposed to always pay their share of the rent, until the tenant has vacated the apartment and this in turn keeps a good relationship with the landlord to keep them participating in the program. Their nonpayment of the HAP violates the statute, the HUD rules and the general core principles of the program.

I am requesting as a reasonable accommodation for you to hold off on the eviction and allow me to finish getting my apartment in order for the inspection, due to my disabilities, until the reasonable accommodation extension of time the Housing Authority gave me, which is October 31, 2022. I am also requesting reasonable accommodation of the use of another storage locker due to my disability to store belongings that are also hampering my ability to organize and pass inspection as I have too much in my apt. I have requested for 6 years since I moved in for RA of a garage which is yet to be granted, due to my disabilities, even though many new move-ins have received garages who appear to be non-disabled.  It has also been very difficult for me to navigate the extreme cold/snow and extreme heat conditions in my car due to my age and disabilities.  This would have greatly helped my disabilities and my situation.

I anticipate that this situation should be resolved by 10/31, particularly if HUD and the DOJ get involved.  As the statute says, you cannot evict or terminate my tenancy for nonpayment of the HAP portion of rent. I am exploring ways in which the rent can be paid with the knowledge that according to the HUD rules and statute, I don't legally owe the HAP portion of the rent.

I apologize that this has occurred. This could have been avoided if the initial inspection accommodation had been granted until October 31, rather than giving me the extension and if the Housing Authority had been following the rules of the program and statute and/or if they had asked for a waiver from HUD.  I also apologize for my disabilities, which have been greatly exacerbated due to discriminatory treatment I received and the pandemic, which caused/contributed to this failed/inconclusive inspection and situation.

Please timely respond and refrain from filing eviction papers and grant reasonable accommodations. Thank you.



   

**(b)** *Nonpayment by PHA: Not grounds for termination of tenancy.*

**(1)** The family is not responsible for payment of the portion of the rent to owner covered by the housing assistance payment under the HAP contract between the owner and the PHA.

**(2)** The PHA failure to pay the housing assistance payment to the owner is not a violation of the lease between the tenant and the

.ıll T-Mobile  LTE  7:11 PM  7%

Cornell Law School                 Search Cornell

[LII]

under the HAP contract between the owner and the PHA.

**(2)** The PHA failure to pay the housing assistance payment to the owner is not a violation of the lease between the tenant and the owner. During the term of the lease the owner may not terminate the tenancy of the family for nonpayment of the PHA housing assistance payment.

Ads by Google

Send feedback   Why this ad? ▷

## Rent

From: Andrew Akins (andrewa@premierapts.com)

To:     claire.1957@yahoo.com

Date: Tuesday, September 20, 2022 at 11:22 AM CDT


Claire, this is a tough spot for both of us. I have talked with Mark Stangus at the City and he suggested talking to Erica, who is the director of HRA, and I have called her and left a message. Not sure if anything can be done or not. I spoke to Petra last might and she said all the garages are taken or there are none available. I asked her about the storage lockers and she said you have two #31 and #34. Is that true?
Will let you know what Erica says.   Andy

## 10101 Lyndale #219

From: Andrew Akins (andrewa@premierapts.com)

To:   schwartz@hnclaw.com

Cc:   cynthia.fahland@hennepin.us; claire.1957@yahoo.com

Date: Monday, September 26, 2022 at 09:52 AM CDT

Rob, I have received a notice from Hennepin county They are going to pay the $2,226.00 that Claire Lee owes in back rent.  Please stop all eviction proceeding.  Thank you for your help in this matter.  Andrew Akins Premier Properties



**Smith, Michele K** <michele.k.smith@hud.gov>

To: Claire Lee

Cc: Clausen, Lucia M, Raleigh, Ryan E, Kitchen, Dana M, Holland, Racheal N

  Wed, Oct 5, 2022 at 2:46 PM ☆

Dear Claire,

Thank you for your email and sorry for the delay in our response. As I said earlier this week, I was working with our Office of Public Housing to make sure that we were applying HUD regulations correctly to your situation. You are correct that the Bloomington HRA should not have withheld your HAP payments. As part of the reasonable accommodation they granted you to extend the deadline for the inspection of your apartment until October 31, they should have continued making the HAP payments for your unit. We have spoken with them, and they now understand their error and will be repaying Hennepin County the $2,226 that was paid for your rent.

What is very important at this point is that you ensure that your unit is inspected **prior to October 31**. The Bloomington HRA Management has told us that they are prepared to inspect your unit as soon as you can clear access to it. Keep in mind, too, that once they conduct the inspection, you will need to correct any deficiencies identified by the deadlines they establish. If you believe you will need help preparing your unit for inspection or correcting deficiencies, we recommend you contact one of the social service agencies the HRA recommended. If the HRA is unable to access your unit by the 31st, or if you do not correct deficiencies identified, the HRA is required under HUD rules to take immediate action, which could lead to eviction. Please contact Ryan Raleigh, the HUD Portfolio Management Specialist assigned to the Bloomington HRA, if you need further assistance. He can be reached at Ryan.Raleigh@hud.gov. Michele

MICHELE K. SMITH
FIELD OFFICE DIRECTOR
Office: (612) 370-3146
Cell: (202) 903-9912
Email: michele.k.smith@hud.gov

HUD MINNEAPOLIS
212 3rd Avenue South
Suite 150
Minneapolis, MN 55401



Fw: Acknowledgement of FOIA Request - #23-FI-RO5-00049 (Claire Lee)

From: Claire Lee (claire.1957@yahoo.com)
To:    claire.1957@yahoo.com
Date: Monday, November 27, 2023 at 06:18 PM CST

Sent from Yahoo Mail for iPhone

Begin forwarded message:

On Friday, October 7, 2022, 1:48 PM, Smith, Michele K <Michele.K.Smith@hud.gov> wrote:

Dear Ms. Lee:

This email acknowledges the U.S. Department of Housing and Urban Development (HUD) received your Freedom of Information Act (FOIA) request dated October 6, 2022. Your request was received in the HUD Minneapolis Field Office on October 7, 2022. You requested all records and communications regarding you, Bloomington HRA, your Landlord (Premier Properties), and HUD since 2015. The assigned tracking number for your FOIA request is 23-FI-RO5-00049. Please reference this tracking number in any communications on this matter.

Pursuant to the FOIA, 5 USC 552(a)(6)(A)(i), once HUD properly receives a FOIA request, the Department has 20 working days within which to make a determination on the request unless unusual circumstances exist. Under unusual circumstances, such as an agency's backlog, or the need to examine a voluminous amount of records required by the request, HUD can extend the 20-day time limit for processing a request.

HUD's policy is to process FOIA requests using "multi-track processing," which allows the Department to process FOIA requests on a first-in/first-out basis within each track. HUD places FOIA requests in its routine or complex track based on the amount of work and time involved in processing the request. The criteria for assignment to a specific track are found in HUD's FOIA regulations, 24 CFR 15.105(a), which were published in the Federal Register on January 22, 2001, at 66 FR 6964. Your request is being processed on the routine track. Please note that upon further evaluation of your request, you may be notified that your request has been transferred to another track.

The Department will comply with your request to the extent permissible by law. Any records not subject to an exemption will be forwarded to you promptly upon the completion of HUD's search and review process. Your request has been assigned to our Office of Public Housing for processing. If you have any questions regarding your request, contact HUD Office of Public Housing Director Lucia Clausen directly at (612) 370-3011 or lucia.m.clausen@hud.gov. Please note that this correspondence will be sent by email; a hard copy will not follow unless requested by you.

Thank you for your interest in the Department's programs and policies.

Sincerely, Michele K. Smith

**MICHELE K. SMITH**
FIELD OFFICE DIRECTOR
Office: (612) 370-3146
Cell:  (202) 903-9912
Email: michele.k.smith@hud.gov

**HUD MINNEAPOLIS**
212 3rd Avenue South
Suite 150
Minneapolis, MN 55401

