UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Claire J. Lee,

    Plaintiff,

V.

City of Bloomington, Bloomington HRA,
Premier Properties, Andrew Akins,
and the United States Department of
Housing & Urban Development (HUD),

    Defendants.

MOTION FOR PROTECTIVE
ORDER TO PROTECT
PLAINTIFF'S IDENTITY IN
THIS LAWSUIT

Case No. 23-CV-2652

    Plaintiff seeks an order from the court to protect her identity in the above-entitled case by ordering all parties to use Plaintiff's initials (C.L.), instead of her full name, in all court filings going forward and to protect her identity in previously filed documents, either by redacting her name, sealing the documents or by replacing her name with her initials. Plaintiff also seeks an order from the court prohibiting parties in this case from disseminating any documents to anyone that could identify Plaintiff or that contain her full name or from communicating her full name to people outside of the case as it relates to this lawsuit and documents in the case.

    Plaintiff is fearful and aware that documents in her case may be posted on the internet or shared with others and that she will be not only be greatly humiliated, but scorned, laughed at, harassed and treated with disgust and disdain.

    There is a very negative connotation and many misconceptions associated with hoarding, unlike other mental or physical disorders. This has been because most people are uneducated about the disorder and tend to generalize and stereotype individuals as cases they have seen on TV, in print, or on the internet. These

1

examples are some of the most severe cases and are, in some cases, sensationalized for the cameras for shock and entertainment value. Most of the cases on the TV show "Hoarders" show most only the severe cases. These cases show severe damage to homes due to hoarding, severe rodent infestations, dead animals in the homes, backed up sewers and unusable bathrooms, hoarders urinating in and keeping dozens of bottles of urine in the home, severe insect and cockroach infestations, severe pileup of papers, inability to walk around the homes due to items hoarded up to the ceiling, garbage/trash everywhere, etc. But it's these cases that are the ones that inform people's judgment and opinions on people with hoarding disorders and they believe that all people who hoard live and behave this way. Even though hoarding cases differ on a severity continuum, all hoarders deserve compassion and the right to be treated with dignity and with their civil rights intact.

Because of the negative coverage of hoarding, there is very little sympathy for people that hoard and most people don't believe that it is a disability. Many of the misconceptions that people believe are that hoarding stems only from laziness, disgusting habits, people just unwilling to clean their home, that people can just clean it up on their own or in a very short time frame, or that people that hoard are just plain disgusting people, among other things. People do not want hoarders as their neighbors or even friends and have very negative views of people that hoard.

In Plaintiff's case, even though the Bloomington HRA has put out a newsletter (Exhibit "A") and held classes for landlords on hoarding, invited guest speakers on the topic and stressed the need to be patient, understanding, accommodating, rational, practical, and to create reasonable and safe expectations for the person who hoards and above all, the need to treat this illness as a disability, Bloomington HRA and the City of Bloomington treated Plaintiff with disdain (def: the feeling that someone is unworthy of one's consideration or respect), with utter contempt (def:

2

the feeling that a person or a thing is beneath consideration, worthiness or deserving scorn) and like a criminal for her hoarding disability.

One of the first things Bloomington did, was to label Plaintiff and her home as a possible "GUD" on their complaint sheet (Exhibit "B"), their designated code word for "Gross Unsanitary Dwelling", that Plaintiff later found out when she picked up a copy of the complaint and asked what "GUD" meant to an employee of the Environmental Health department. Although they had never met Plaintiff or even talked to Plaintiff, "gross" was their automatic response. They did not even entertain the thought that the complaint that was called into them for hoarding, infestation of flies and smells could have been false or exaggerated. Plaintiff does hoard and has a hoarding disorder disability, but did not have an infestation of flies or smells emanating from her apartment. Everybody knows what gross means, it means disgusting, like vomit, feces, something decayed, or something extremely unpleasant to look at or smell, among other things. In describing Plaintiff's home this way, they were describing Plaintiff and her living conditions and habits. They further were stereotyping Plaintiff as someone who possibly or must have gross living conditions, simply because Plaintiff hoards. This dehumanized (def: to deprive someone of human qualities, personality or dignity) and denigrated (def: to defame or belittle, dismiss, put down, minimize) Plaintiff and has made Plaintiff feel worthless and even more humiliated about her hoarding mental health condition.

The next thing Bloomington did was to deliberately not contact Plaintiff about the inspection they scheduled, after and due to the hoarding complaint. They instead contacted Plaintiff's landlord and then the landlord also intentionally failed to contact Plaintiff, so Plaintiff was subjected to a surprise visit at her home. Even though Plaintiff was residing at the apartment, was the rightful occupant of the apartment, was the person responsible for the living conditions and was the person who the complaint was directed at and the subject of the complaint, Bloomington

3

deliberately did not contact Plaintiff about the inspection. It is Bloomington's policy and practice not to directly contact hoarders prior to showing up for inspection.

On August 26, 2021 Plaintiff was traumatized and terrorized by 3 officials from the City of Bloomington pounding on her door and yelling City of Bloomington for 15-30 minutes repeatedly and so that all of her neighbors could hear and witness it. Plaintiff at the time was shaking, panicking and crying and did not answer the door because she was terrified and didn't know what it was for. Plaintiff had been laying down due to leg pain and swelling as ordered by her doctor to elevate her legs and was watching TV at the time and Plaintiff was not expecting this. Bloomington employees deliberately pounded and yelled for that extended time period so that they would intimidate, frighten and wear down Plaintiff to open the door. There was no other justification for pounding and yelling for that extended period of time. It felt like a police raid to Plaintiff and Plaintiff was scared that they were going to break down her door. Plaintiff has PTSD and nightmares and excessive worries and rumination about housing insecurity and losing her housing and going homeless. A home is where you should feel safe and Plaintiff did not feel safe and was traumatized and terrorized in her own home.

Plaintiff has had long-standing reasonable accommodations in her rental homes for about 20 years - first, since about 2001, Kristen Siegesmund and Amber Hawkins, who are now Hennepin County Judges and other Legal Aid Attorneys helped Plaintiff with the accommodations, including that Plaintiff not have unannounced visits at her door, because unannounced visits greatly exacerbates her disabilities. Plaintiff's Psychiatrist since 2008, Dr. Kimberly Fitch, has requested these accommodations numerous times for Plaintiff in her housing since 2008. In addition, Bloomington was told by the complainant that Plaintiff had "special needs", but Bloomington did not bother or care to find out what those needs were before showing up unannounced. For the most part, Bloomington was not being

4

patient, kind, understanding, treating Plaintiff like she had a disability, accommodating or reasonable, like Bloomington was teaching landlords to behave in dealing with hoarding disabled persons and situations. This was more like treating Plaintiff like a criminal and using police tactics or worse. They came with the expectation of intimidating, shaming, blaming, ordering and scaring Plaintiff into submission.

After they finally left, Plaintiff called the City of Bloomington very upset and in tears and asked why they came. Plaintiff was told of the complaint against her for hoarding, infestation of flies and smells. Plaintiff stated that she hoards and has too much personal possessions in her apartment, but that she has never had a fly infestation and did not have garbage smells, because she regularly took her garbage out. Plaintiff was treated as though she had committed a crime. Plaintiff was told by Shannon Rohrer that she must allow an inspection or they would contact her landlord and jeopardize her housing. Plaintiff did make an inspection appointment, but it eventually was cancelled by Bloomington and they closed the case on August 31, 2021 after learning more details and evidence from Plaintiff that it was a substantially false report that had been filed against her. The Community Development Director, Karla Henderson, told Bloomington HRA to work with Plaintiff to help her with this issue of getting her apartment more livable and functional, but they never contacted Plaintiff to help Plaintiff in any way regarding this issue and just allowed the issue to continue so that she would fail her HCV inspection that was coming up 9 months later and so that they could intentionally cause Plaintiff problems, more fully explained in the Complaint in this case.

Bloomington called Plaintiff and her home "gross" without even seeing it or talking with her; made assumptions and stereotypes about Plaintiff and her hoarding disability; they didn't care to find out what Plaintiff's "special needs" were in case she needed accommodation; they refused to contact Plaintiff for an appointment and

5

instead showed up at her apartment unannounced; they banged and yelled loudly at her door for 15-30 minutes continuously; and they treated Plaintiff like a criminal during the visit to her home and after, among other things. Even though this was very bad, this almost pales in comparison to what Bloomington HRA did to Plaintiff because of her hoarding disability and needs for reasonable accommodation, discussed more fully in the Complaint in this case.

Because if the City of Bloomington employees stereotype, discriminate, threaten, intimidate, lack patience and understanding, and belittle Plaintiff with terms like "gross", etc. when they hold classes basically teaching landlords to do the opposite because hoarding is a disability, it is most certain that others who don't have as much knowledge about hoarding will react even worse towards Plaintiff, and will stereotype and be even more judgmental and cruel to Plaintiff.

Hoarding, pet abuse, and child molestation are probably some of the worst issues that people are disgusted by, other than violent crime. There are certainly others too, but hoarding also carries with it extreme humiliation and shame on the part of the hoarder, and sometimes anger from people that don't understand why you can't just dig in and clean it up, like they could, and that they would never let it get that bad in the first place. There is a huge judgmental and disgust factor with hoarding towards the hoarder from other people.

But there is also a huge stereotyping factor with hoarding. Because of the TV shows, news articles, internet and other forms of media that tend to show the worst of hoarding, this makes people believe that all hoarders' homes look that way or all hoarders act that way. Just like with mental illness and other behavioral issues, there are different levels of hoarding and all hoarders are not alike. Plaintiff's home was way too full of personal items she bought and kept (some items landed in her home that should not have due to her chaotic and fast move she was forced to make due to Bloomington's previous illegal conduct towards Plaintiff) and she did not have full

6

use of her rooms or ability to walk around easily in her home due to the amount of items, but Plaintiff did not have smelly garbage in her home, any property damage of any kind, insect infestations or the severe "gross" factor that you see on TV, such as urine in bottles or sewage overflows. But even Bloomington believed that she did or at least might.

It is appropriate to use initials, instead of a full name, in cases where the person may be at risk of harm or danger or there may be humiliating and/or sensitive medical information about them in the case. Plaintiff believes protecting her identity is necessary because Plaintiff will be humiliated and subjected to jokes and ridicule, and will be judged, thought of and stereotyped as someone who is "gross" simply for just having too many possessions. Plaintiff has had several mental disorders since 1990 and Plaintiff is no longer humiliated by them because there is no longer the stigma associated with mental illness that there once was and most of the population suffers at one time or another with it. But hoarding is different, there is negative media coverage about it and there is a "gross" factor associated with it, rightly or wrongly, and mostly all negative stereotypes and judgments. Since people don't understand it, they blame the hoarder and call the hoarder lazy, gross, unclean, and don't have any patience or understanding.

Plaintiff only found out that hoarding was considered a disability after the August 26, 2021 surprise visit to her home for inspection. Prior to that, Plaintiff tried to keep as few people as possible from knowing about it, because Plaintiff was so embarrassed and ashamed about it. Plaintiff even asked her psychiatrist to keep the term "hoarding" off of her recent reasonable accommodation letters due to shame. Plaintiff is only slowly coming to terms with it as she learns more about it, but having it spread across the internet would harm Plaintiff and cause her distress. Prior to commencing this lawsuit, Plaintiff used the word hoarding only sparingly in her communications with Bloomington, although her landlord and Bloomington

7

were certainly aware of it. Plaintiff never dreamed that she would be a hoarder late in life and it certainly wasn't an aspiration. Plaintiff wants to keep a nice home and has in the past, but trauma, mental distress, and mental conditions have exacerbated/caused this condition.

Because hoarding pretty much only generates negative reactions and judgments, unlike mental illness in general which has become more socially and societally acceptable because of its wide affliction percentage in the population, better treatment and de-stigmatization efforts, hoarding is still both socially and personally unacceptable and is an illness that engenders scorn, both from outside and from within. Because even Bloomington considers hoarding, and refers to Plaintiff, the person who hoards, as "gross" (because you can't separate the two as it is a manifestation of Plaintiff's behavior and mood), then this indicates that the general population would react even more negatively to Plaintiff and her hoarding behavior. Because Plaintiff has shown a need to protect her identity in this lawsuit due to her hoarding disability being medically sensitive information which has the great probability of causing Plaintiff emotional distress, embarrassment, humiliation, ridicule, and other things, particularly if this were disseminated in any manner and/or uploaded to the internet, this court should grant Plaintiff's motion to use her initials (C.L.) in place of her written name and should order all parties to use Plaintiff's initials on all court documents in this case and for all parties to refrain from publishing or disseminating any previous documents that refer to Plaintiff by name in this case and/or seal such documents.

Respectfully submitted,

Dated: 1/26/2024

*Claire J. Lee*

Claire J. Lee
10101 Lyndale Avenue South
Apt. 219
Bloomington, MN  55420
(612)402-9206
claire.1957@yahoo.com