UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Claire J. Lee,

    Plaintiff,

v.

The City of Bloomington, Bloomington HRA, Premier Properties, and Andrew Akins,

    Defendants.

CIVIL NO. 23-cv-2652 (SRN/DJF)

**JOINT RULE 26(f) REPORT**

---

The parties/counsel identified below conferred as required by Fed. R. Civ. P. 26(f) and the Local Rules, on **April 30, 2024**, and prepared the following report.

The initial pretrial conference required under Fed. R. Civ. P. 16 and LR 16.2 is scheduled for **May 15, 2024, at 2:00 p.m**., before the United States Magistrate Judge Dulce Foster. The parties do not believe the pretrial conference may be canceled and the pretrial scheduling order may be issued based on the parties' joint rule 26(f) report.

(a) Rule 7.1 Disclosures

    The parties must comply with Rule 7.1, if applicable:

    (1) For plaintiff: Rule 7.1 does apply.

    (2) For defendant Premier Properties: Rule 7.1 does apply. It does not apply to the other defendants.

(b) Description of the Case.

    (1) Concise factual summary of plaintiff's claims:

Plaintiff was subjected to many acts of discrimination, retaliation, and abuse by the named Defendants in this action on a continuing basis on account of her disabilities and because of needing and requesting reasonable accommodations for her disabilities. She was also repeatedly and unlawfully threatened, coerced, extorted, intimidated and had her housing and accommodations interfered with by these Defendants on account of her disabilities and need for reasonable accommodations. Plaintiff was regarded by all Defendants as having a hoarding disability.

More specifically, Defendants City of Bloomington and Bloomington HRA, engaged in reprisal when Plaintiff needed accommodations for her hoarding disability and extensions of time to clean/organize her apartment for inspection. Bloomington repeatedly threatened Plaintiff with the loss of her housing and did not adequately reasonably accommodate her disability needs. Their actions caused Plaintiff to be harassed with eviction by her landlord, all the while the HRA was attempting to terminate Plaintiff from the HCV program. They retaliated after Plaintiff reported their discriminatory conduct to superiors and to HUD. Bloomington HRA also discriminated and retaliated against Plaintiff when they charged Plaintiff 30% of her inheritance on account of her disability related method of how she received her inheritance, when non-disabled program participants are allowed to keep their inheritance. Bloomington HRA also retaliated and discriminated against Plaintiff when they withheld and forced Plaintiff to pay the Housing Assistance Payments (HAP) when they knew that Plaintiff was never legally responsible for them and they knew Plaintiff was in the process of being evicted for their own misconduct of refusing to pay the HAP. They were so callous that they gave Plaintiff no 30 day grace period to correct any deficiencies before abating the payments. Bloomington HRA and Aarica Coleman retaliated and sent threats to Plaintiff in the hospital and they posted on her door in a public hallway her private data/information and sent her a picture of this posted information -- a copy of a failed HCV inspection report and a letter demanding inspection for the next day or else Plaintiff would be terminated from the program. Aarica Coleman refused to remove this information that was publicly posted in order to embarrass, humiliate and cause Plaintiff emotional distress. Bloomington HRA also engaged in conversion of Plaintiff's property of the emergency assistance grant and her HCV voucher/payment. Bloomington HRA and Aarica Coleman also engaged in abuse of a vulnerable adult/elder abuse for the

2

actions described in the complaint and quid pro quo harassment and hostile environment harassment described in the complaint. They committed intentional infliction of emotional distress because their actions were intentional, extreme, outrageous and reckless and Plaintiff has severe and permanent damages. They committed acts of intentional invasion of privacy and violations of the MGDPA when they posted Plaintiff's private information in the public hallway of Plaintiff's apartment building on her door which was especially egregious as it interfered with the solitude and sanctity of her home where Plaintiff had a right to be free from harassment, alerted everyone that Plaintiff had issues in her home and with the housing authority and it alerted would be burglars that Plaintiff was not home. Bloomington HRA did other heinous acts described in the complaint. These acts were intentional, malicious, punitive and caused Plaintiff severe emotional distress and exacerbations of her physical and mental health.

Defendant City of Bloomington Environmental Health Division discriminated and unlawfully came to Plaintiff's door unannounced for an inspection complaint that, on information and belief, was made by her Landlord for hoarding, etc. Bloomington intentionally failed and neglected to contact Plaintiff in any manner ahead of time even though Plaintiff needed reasonable accommodations of no unannounced visits and the complaint clearly stated that Plaintiff has special needs. They pounded loudly and yelled repeatedly City of Bloomington outside her door for 15-30 minutes to intimidate Plaintiff to open the door. They didn't care that all of her neighbors could hear this. This terrified and traumatized Plaintiff and Plaintiff has emotional distress and nightmares about this. The hoarding complaint was almost immediately dismissed. Bloomington caused Plaintiff intentional infliction of emotional distress and Plaintiff had a right to be free from harassment in her home when a home is supposed to be where you feel peace, solitude and safe.

Defendant Premier Properties has discriminated against Plaintiff in many ways and caused a hostile environment for Plaintiff to live in on a continuing basis. Premier Properties and Andrew Akins repeatedly harassed and badgered Plaintiff with doing a fuse box change out during lockdown and pandemic when non-essential activities were to be curtailed for everyone's safety, even after Plaintiff requested it to stop and that it was exacerbating her disabilities. Plaintiff was abused and harassed by another tenant related to her hoarding disability that was

instigated by the onsite manager, Petra Larson. On information and belief, Premier Properties' owner/employee Andrew Akins and/or Bob Larson made a substantially false complaint to the City of Bloomington on Plaintiff regarding hoarding, fly infestation and bad odors. Plaintiff did not have a fly infestation or any odors in her apartment. This was defamatory and retaliatory and they did not reasonably accommodate Plaintiff by giving her even a chance to address the issue or with any notification of the complaint. Premier Properties has denied Plaintiff's reasonable accommodation request and failed to accommodate Plaintiff's disabilities by refusing to allow Plaintiff appointments for all visits and 2 weeks notice so she can prepare and be present, and no unannounced visits to her home, etc. Premier Properties failed to reasonably accommodate Plaintiff with a garage as the garage was not timely and came more than 6 years after she requested one that she needed for her disabilities. Premier Properties and Andrew Akins unlawfully threatened and intimidated Plaintiff with eviction unless she paid rent money in excess of her contractually obligated rent and coerced money out of her to cover the HAP payments that he knew she did not owe. Instead of getting those payments from the HRA, he harassed Plaintiff for them. He also defamed Plaintiff in connection with those payments. Premier Properties also failed to reasonably accommodate with another storage locker to help Plaintiff's hoarding disability. They also committed conversion of Plaintiff's property of the EA grant, Andrew Akins defamed Plaintiff in connection with this grant, created a hostile emvironment and quid pro quo harassment by continually harassing Plaintiff and also conditioning Plaintiff's housing on her payment of the HAP under threat of eviction unless she paid it. All of the above violated the covenants of quiet enjoyment of her tenancy and greatly illegally interfered with her tenancy and caused her extreme emotional distress. Her home should have been a peaceful place to reside where Plaintiff could feel safe, but all of the Defendants destroyed that by their illegal actions. Please see complaint for more claims.

(2) Concise factual summary of defendants' claims/defenses:

<u>Defendants Premier Properties and Andrew Akins</u>: Pro se Plaintiff Claire Lee has brought a 79 page, 164 paragraph Amended Complaint against the City of Bloomington, Bloomington HRA, Premier Properties and Andrew Akins for alleged housing discrimination. Ms. Lee claims she was "abused, harassed, discriminated against, retaliated against, coerced, intimidated, and threatened" by the Housing Authority and Landlord. Defendants

Premier Properties and Andrew Akins deny each and every allegations directed at them. Further, they deny they are liable for any of the claims alleged against them by Plaintiff. Further, they deny Plaintiff incurred any of the damages alleged in her Amended Complaint or otherwise.

<u>Defendants The City of Bloomington and Bloomington HRA</u>: Pro se Plaintiff Claire Lee has brought a 79 page, 164 paragraph Amended Complaint against the City of Bloomington, Bloomington HRA, Premier Properties and Andrew Akins for alleged housing discrimination. Ms. Lee claims she was "abused, harassed, discriminated against, retaliated against, coerced, intimidated, and threatened" by the Housing Authority and Landlord. Defendants City of Bloomington and the Bloomington HRA ("the City") deny the allegations. Rather, the facts will show the City handled the complaint about Ms. Lee's apartment appropriately and followed all rules and regulations. Moreover, any allegations regarding improper withholding of rent are also without merit.

(3) Statement of jurisdiction (including statutory citations)[1]: 28 U.S.C. § 1331 and § 1343; 42 U.S.C. § 3613; 42 U.S.C. § 3601 and § 3604, *et seq.*; and 28 U.S.C. § 1367.

(4) Summary of factual stipulations or agreements: None.

(5) A jury trial has been demanded by Plaintiff.

(6) The parties do not agree to resolve the matter under the Rules of Procedure for Expedited Trials of the United States District Court, District of Minnesota, if applicable.

(c) Pleadings.

The status of pleadings is as follows: All process has been served and all pleadings filed. Plaintiff intends to bring a motion to amend her complaint to add/or subtract claims, remove HUD related claims and narrative, add at least one party, and add a punitive damage claim, etc. Defendants will oppose Plaintiff's motion.

---

[1] In any case based on diversity jurisdiction in which a party is an LLC, this statement should identify the citizenship of each of its members and any subdivisions of its members. *See Key Enterprises, LLC v. Morgan*, No. 12-CV-2628 (PJS/JSM), 2013 WL 353911, at * 1 (D. Minn. Jan. 29, 2013).

(d) Other Fact Discovery.

The parties recommend that the Court establish the following fact discovery deadlines and limitations.

(1) Deadline for initial disclosures under Fed. R. Civ. P. 26(a)(1): **August 1, 2024**.

(2) Deadline for the exchange of documents identified by each party's Rule 26(a)(1) initial disclosures: **August 1, 2024**.

(3) Interim deadline [if any] for the substantial completion of document production [to facilitate the scheduling and taking of depositions]: **N/A**.

(4) Deadline for service of deposition notices or subpoenas under Fed. R. Civ. P. 30(b)(6) **Sixty days before closing of discovery**. Any notice of 30(b)(6) deposition must be served at least **21** days before the scheduled deposition date.

(5) Deadline for completion of mental or physical examinations under Fed. R. Civ. P. 35: **Sixty days before closing of discovery**.

(6) Deadline for the close of all fact discovery: **Plaintiff requests May 1, 2025. Defendants request December 1, 2024**.

(7) The parties have discussed the scope of discovery, including relevance and proportionality, and propose that the Court limit the use and numbers of discovery procedures as follows:

   (A)   50 interrogatories per party on each party;

   (B)   50 document requests per party on each party;

   (C)   50 requests for admissions per party on each party; and

   (D)   10 fact depositions (including Fed. R. Civ. P. 30(b)(6) depositions);

(8) The parties have discussed the need for mental or physical examinations under Fed. R. Civ. P. 35 and agree to the following [number and type of examination]: **Between 1 and 3**.

(e) Expert Discovery.

(1) The parties anticipate that they will require expert witnesses at the time of trial.

   (A) The plaintiff anticipates calling **between 1 and 3** experts in the medical field.
   (B) The defendants anticipate calling **between 1 and 3** experts in the medical field.

(2) The parties propose that the Court establish the following plan for expert discovery:

   (A) Initial experts.
      (i) The identity of any expert who may testify at trial regarding issues on which a party has the burden of persuasion, or in a party's primary case (irrespective of burden), must be disclosed on or before **90 days before the close of discovery.**
      (ii) The initial expert written report completed in accordance with Fed. R. Civ. P. 26(a)(2)(B) must be served on or before **90 days before the close of discovery.**

   (B) Rebuttal experts.
      (i) Rebuttal expert reports shall be limited in scope to the topics addressed in initial expert reports. The identity of any expert who may testify in rebuttal to any initial expert must be disclosed on or before **30 days before the close of discovery.**
      (ii) Any rebuttal expert's written report completed in accordance with Fed. R. Civ. P. 26(a)(2)(B) must be served on or before **30 days before the close of discovery.**

   (C) All expert discovery must be completed by **the discovery deadline.**

(f) Other Discovery Issues.

   (1) Discovery of Electronically Stored Information (ESI).[2]

   **N/A.**

   (2) Protective Order. The parties met and confer on April 30, 2024, regarding Plaintiff's request for a Protective Order. The parties did not reach any agreement and Plaintiff may renew her motion or a Protective Order.

   (3) Claims of Privilege or Protection. As required by Fed. R. Civ. P. 26(f)(3)(D), the parties have discussed procedures for asserting that information is protected by a privilege or the work-product doctrine, including procedures for asserting these claims after production (so-called "claw-back" procedures), and whether to request an order from the Court under Fed. R. Evid 502(d). The parties have not reached an agreement and will jointly submit a report identifying any areas of disagreement on or before **December 1, 2024.**

   (4) Attorney's Fees. The parties do not anticipate that a claim for attorney's fees will be litigated in this case unless plaintiff retains counsel. The parties have not reached an agreement regarding the manner in which attorney time will be documented.

(g) Proposed Motion Schedule.

---

[2] Counsel should review and consider "Discussion of Electronic Discovery at Rule 26(f) Conferences: A Guide for Practitioners," http:www.mnd.uscourts.gov, and discuss whether a formal ESI plan or protocol is appropriate. If so, the parties should: (1) consider whether their plan should be submitted to the Court as a proposed order; (2) exchange lists of the types of ESI each party will seek in discovery, including custodial ESI (e.g., email) and non-custodial ESI (e.g. centralized databases); (3) discuss where ESI is stored, including storage on the party's premises, data stored by a party using third party providers (e.g., the "cloud"), storage on devices used by a party (or its employees) including laptops, smart phones or other personal devices; (4) discuss whether email or other electronic communications will be sought and identify what ESI discovery tools or techniques will be applied; (5) discuss the preservation and production of metadata, if appropriate; and (6) discuss the other topics relating to ESI discovery set forth in the Federal Rules of Civil Procedure. A plan or protocol should be clear on how the plan or protocol will operate during the course of fact discovery to satisfy a party's obligation to respond to a first and subsequent sets of document requests.

The parties propose the following deadlines for filing motions:

(1) Motions seeking to join other parties must be filed and served by: Plaintiff requests until **October 1, 2024.** Defendants request until **August 1, 2024**.

(2) Motions seeking to amend the pleadings must be filed and served by: Plaintiff requests until **October 1, 2024**. Defendants request until **August 1, 2024**.

(3) Other non-dispositive motions must be filed and served by **the Discovery Deadline.**

(4) All dispositive motions must be filed and served by **the Discovery Deadline**.

(h) Trial.

(1) The parties agree that the case will be ready for trial on or after **90 days after the discovery deadline.**

(2) The anticipated length of the jury trial is **5** days.

(i) Insurance Carriers/Indemnitors.

Defendants Premier Properties and Andrew Akins are insured by American Family Insurance Company under a reservation of rights with a liability limit of $2,000,000.

Defendants The City of Bloomington and Bloomington HRA and its employees are self-insured members of the League of Minnesota Cities Insurance Trust, with statutory limits of liability. *See* Minn.Stat. § 466.04.

(j) Settlement.

(1) The parties discussed settlement before the initial pretrial conference. Plaintiff indicated she is not yet in a position to submit a demand to defendants.

(2) The parties propose that a settlement conference be scheduled to take place before **August 1, 2024**.

(3) The parties have discussed whether alternative dispute resolution will be helpful to the resolution of this case and recommend the following:
**Magistrate Settlement Conference.**

(k) Trial by Magistrate Judge.

The parties have not agreed to consent to jurisdiction by the Magistrate Judge under 28 U.S.C. § 636(c).

Dated: May 8, 2024        <u>*/s/ Claire J. Lee*</u>
Claire J. Lee
10101 Lyndale Ave. So.
Apt 219
Bloomington, MN 55420
Tel:   (612) 402-9206 (Cell)
Claire.1957@yahoo.com

***Plaintiff, pro se***

Dated: May 8, 2024　　　　**ERICKSON, ZIERKE, KUDERER & MADSEN, P.A.**

By: */s/ Matthew M. Johnson*
　　Matthew M. Johnson (#27723X)
7301 Ohms Lane, Suite 207
Minneapolis, MN 55439
Tel:　　(952) 582-4711
Email:　matt.johnson@ezkm.net
***Attorneys for Defendants Premier Properties and Andrew Akins***

Dated: May 8, 2024　　　　**IVERSON REUVERS**

By: */s/ Jason J. Kuboushek*
　　Jason J. Kuboushek (#304037)
9321 Ensign Avenue South
Bloomington, MN 55438
Tel:　　(952) 548-7200
Email:　jasonk@inversonlaw.com
***Attorneys for The City of Bloomington and Bloomington HRA***